**Pamela H. YANCO, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 00–5058.

United States Court of Appeals, Federal Circuit.

July 24, 2001.

Jeffrey L. Allen, of Wellesley Hills, MA, argued for plaintiff-appellant.

Kyle E. Chadwick, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. On the brief were David M. Cohen, Director; Kathryn A. Bleecker, Assistant Director; and Elizabeth W. Newsom, Attorney. Of counsel on the brief were Gregory C. Brady, Deputy General Counsel; and Lila Sultan, Attorney Advisor, Office of the General Counsel, Office of Justice Programs, Department of Justice, of Washington, DC.

Before SCHALL, GAJARSA, and LINN, Circuit Judges.

SCHALL, Circuit Judge.

Pamela H. Yanco is the widow of William Yanco, who served as a public safety officer with the Wellesley, Massachusetts police force. Following her husband's death by suicide, Ms. Yanco submitted a claim to the Department of Justice's Bureau of Justice Assistance ("BJA") seeking death benefits under the Public Safety Officers' Benefits Act of 1976 (the "Benefits Act" or "Act"), Pub.L. No. 94–430, 90 Stat. 1346 (codified as amended at 42 U.S.C. §§ 3796–3796c (1994)). After BJA denied her claim, Ms. Yanco brought suit in the United States Court of Federal Claims.

In due course, the parties cross-moved for summary judgment based upon the

administrative record. After considering the motions, the Court of Federal Claims granted summary judgment in favor of the government and dismissed Ms. Yanco's complaint. The court ruled that recovery under the Benefits Act was barred because Officer Yanco had not died as the result of a "personal injury" within the meaning of the statute, as interpreted by BJA regulations. *Yanco v. United States*, 45 Fed. Cl. 782, 792–93 (2000). We affirm.

## BACKGROUND

### I.

■■■ The Benefits Act provides a one-time cash payment to survivors of public safety officers who die in the line of duty. Section 3796(a) states in pertinent part:

In any case in which the Bureau of Justice Assistance ... determines, under regulations issued pursuant to this subchapter, that a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty, the Bureau shall pay a benefit of $100,000 ... as follows:

(1) if there is no surviving child of such officer, to the surviving spouse of such officer;

(2) if there is a surviving child or children and a surviving spouse, one-half to the surviving child or children of such officer in equal shares and one-half to the surviving spouse;

(3) if there is no surviving spouse, to the child or children of such officer in equal shares; or

(4) if none of the above, to the parent or parents of such officer in equal shares.

42 U.S.C. § 3796(a) (1994). For a survivor or survivors to qualify for the payment, the public safety officer (1) must have suffered a "personal injury" within the meaning of the Act, (2) the injury must have been suffered "in the line of duty," and (3) the death must have been "the direct and proximate result" of the personal injury.

Section 3796a sets forth specific restrictions upon entitlement. It provides as follows:

No benefit shall be paid under this subchapter—

(1) if the death or catastrophic injury was caused by the intentional misconduct of the public safety officer or by such officer's intention to bring about his death or catastrophic injury;

(2) if the public safety officer was voluntarily intoxicated at the time of his death or catastrophic injury;

(3) if the public safety officer was performing his duties in a grossly negligent manner at the time of his death or catastrophic injury;

(4) to any individual who would otherwise be entitled to a benefit under this subchapter if such individual's actions were a substantial contributing factor to the death or catastrophic injury of the public safety officer; or

(5) to any individual employed in a capacity other than a civilian capacity.

42 U.S.C. § 3796a (1994). Among other things, § 3796a prohibits the payment of benefits to the dependents of an officer who intentionally brings about his or her own death.

■■■ Under 42 U.S.C. § 3796c(a), BJA is "authorized to establish regulations and

procedures as may be necessary to carry out the purposes of this subsection." Pursuant to this authority, regulations have been promulgated to implement the Benefits Act. In the regulations, "personal injury" is defined as "any traumatic injury, as well as diseases which are caused by or result from such injury, but not occupational diseases." 28 C.F.R § 32.2(e) (1997). "Traumatic Injury" is defined as "a wound or the condition of the body caused by external force, including injuries inflicted by bullets, explosives, sharp instruments, blunt objects or other physical blows, chemicals, electricity, climatic conditions, infectious diseases, radiation, and bacteria, but excluding stress and strain." 28 C.F.R. § 32.2(g) (1997). Thus, the regulations exclude stress and strain from the definition of "personal injury."

## II.

The pertinent facts are not in dispute. William Yanco was a member of the Wellesley, Massachusetts police force from 1971 until his death in 1992. He served as a Safety Officer, a Drug Abuse Resistance Education Officer, and a Youth Officer. In all three positions he designed programs to promote child health and safety and prevent juvenile delinquency. *Yanco*, 45 Fed. Cl. at 783. As part of his authorized duties as a Youth Officer, Officer Yanco counseled troubled children and their families, often in their homes. *Id.*

On May 28, 1992, the mother of a ten-year old boy whom Officer Yanco was counseling accused Officer Yanco of engaging in sexually inappropriate behavior with the boy. Officer Yanco immediately reported the allegation to his supervisor, and there ensued investigations by the Internal Affairs Office of the Wellesley Police Department, the Wellesley Department of So-

cial Services, and the District Attorney of Norfolk County, Massachusetts. *Id.* at 784. The accusation and resulting investigations drew significant media attention. *Id.* Each investigation concluded that Officer Yanco did not engage in any misconduct, and at the time of his death, Officer Yanco was aware of the results of at least two of the investigations. *Id.*

In the wake of the allegation against him, Officer Yanco "appeared acutely distressed." *Id.* He "suffered pervasive mood disturbances that resulted in crying spells, loss of sleep, appetite and the capacity for enjoyment." *Id.* Ms. Yanco urged her husband to seek professional help, but he refused. *Id.* at 785.

On June 22, 1992, Officer Yanco left work early, leaving on his computer a note for his wife and another note for his children. At about 2:00 p.m., he telephoned the Police Department from his home. While on the phone, he fatally shot himself. *Id.*

## III.

Following her husband's death, Ms. Yanco applied to the Town of Wellesley Retirement Board for pension benefits, basing her claim on the ground that her husband's death had occurred in the line of duty. *Id.* A psychologist and a psychiatrist submitted reports in support of the claim, stating that Officer Yanco's suicide was causally related to his work as a police officer. *Id.* Based on these reports, on August 26, 1993, the Board held that Officer Yanco had died in the line of duty, entitling his widow to benefits. *Id.* at 785–86. The Massachusetts Division of Public Retirement Administration affirmed the Wellesley Retirement Board's decision on September 20, 1993, and awarded state pension benefits to Ms. Yanco. *Id.* at 786.

On June 9, 1993, Ms. Yanco filed a claim for death benefits with the Public Safety Officers' Benefits Act Office ("PSOBO"), a unit of BJA. PSOBO denied her claim on October 26, 1993, and Ms. Yanco filed a notice of appeal. *Id.* In accordance with BJA regulations, the matter was referred to a Hearing Officer, who received evidence and held a hearing.[1] On December 6, 1995, the Hearing Officer rendered a decision in which he determined that Officer Yanco's suicide was the result of an injury sustained in the line of duty, entitling his widow to benefits. *Id.* at 787. In reaching his decision, the Hearing Officer concluded: "Officer Yanco's post traumatic stress disorder and major depression qualify as personal injuries. That is, they were traumatic injuries, wounds inflicted upon his mind, triggered by the allegation of sexual misconduct, an external force." He also concluded that Officer Yanco's impaired mental state rendered his suicide unintentional. On review, however, the Director of BJA reversed the Hearing Officer's decision.[2] In a decision dated February 18, 1997, the Director concluded that the term "traumatic injury" in BJA's implementing regulations does not encompass stress. As a result, the Director stated: "Officer Yanco's 'injury' is not encompassed within the definition of 'personal injury,' and is therefore not cognizable under the [Benefits] Act." *Id.* at 788. The Director also concluded that Officer Yanco's death was not sustained "in the line of duty," as required by § 3796(a), because, when Officer Yanco shot himself, he was not performing an action which he was "obligated or authorized by rule, regulations, condition of employment or service, or law to perform." 28 C.F.R. § 32.2(c)(1) (1997); *see also Yanco* 45 Fed. Cl. at 788. The Director further concluded that, even if Officer Yanco's death could be viewed as a result of traumatic injury, benefits would not be payable to Ms. Yanco because of the prohibition in the Benefits Act against paying benefits when an officer's death is intentional. *Yanco,* 45 Fed. Cl. at 788.

## IV.

Ms. Yanco timely filed suit in the Court of Federal Claims to challenge BJA's denial of her claim under the Benefits Act. As noted above, in due course, the parties cross-moved for summary judgment based upon the administrative record. In considering the summary judgment motions, the court accorded deference under *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to BJA's construction of the term "personal injury" in 42 U.S.C. § 3796(a). *Id.* at 792. The court concluded that Ms. Yanco had not carried her burden of establishing that BJA's determination that post traumatic stress disorder and depression were encompassed by the exclusionary language "stress and strain" in 28 C.F.R. § 32.2(g) was unreasonable. *Id.* Because, in its regulations, BJA has interpreted "personal injury" as excluding "stress and strain," the court concluded that Officer Yanco's death by suicide did not result from a "personal injury" within the meaning of the Act. *Id.* The court therefore granted summary judgment in favor of the government and denied Ms.

---

1. A claimant may request BJA to reconsider its finding of ineligibility. Upon request for reconsideration, BJA will provide the claimant with the opportunity for an oral hearing before a Hearing Officer. 28 C.F.R. § 32.24.

2. Pursuant to 28 C.F.R. § 32.24(h)(1) (1997), the Director of BJA "may, on his or her own motion, review a determination made by a Hearing Officer."

Yanco's motion, thereby upholding BJA's denial of Ms. Yanco's claim for death benefits.

We have jurisdiction over Ms. Yanco's appeal pursuant to 28 U.S.C. § 1295(a)(3) (1994).

## DISCUSSION

### I.

■ Judicial review of BJA's denial of a claim for death benefits under the Benefits Act is limited to three inquiries: (1) whether there has been substantial compliance with statutory requirements and with the requirements of implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the government officials involved; and (3) whether the decision denying the claim is supported by substantial evidence. *Chacon v. United States,* 48 F.3d 508, 511 (Fed.Cir.1995).

■ Ms. Yanco's principal argument on appeal is that, in denying her claim under the Act, BJA misapplied the statute. She contends that the term "personal injury" in 42 U.S.C. § 3796(a) includes mental injuries, such as post traumatic stress disorder and depression, and that the Court of Federal Claims therefore erred in according *Chevron* deference to the BJA regulations at 28 C.F.R. §§ 32.2(e) and 32.2(g) which define "personal injury" to exclude stress and strain. Ms. Yanco's argument that these regulations are contrary to the Benefits Act presents an issue of statutory construction, a matter of law that we review *de novo. Doyon, Ltd. v. United States,* 214 F.3d 1309, 1314 (Fed.Cir.2000).

■ "[A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.,* —— U.S. ——, 121 S.Ct. 2164, 2171, 150 L.Ed.2d 292 (2001). Congress has expressly delegated to BJA the task of promulgating regulations to implement the Benefits Act. *See* 42 U.S.C. § 3796c(a); 42 U.S.C. § 3796(c). The regulations at issue in this case, those set forth at 28 C.F.R. §§ 32.2(e) and 32.2(g), were promulgated in the exercise of that authority. *See* 28 C.F.R. § 32.1 (1997). BJA's implementing regulations thus qualify for *Chevron* deference.

■ Under *Chevron,* two questions must be addressed. The first is "whether Congress has directly spoken to the precise question at issue." *Chevron,* 467 U.S. at 842, 104 S.Ct. 2778. "If the intent of Congress is clear," both the court and the agency involved "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. 2778. If, however, the court determines that "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778.

The "precise question at issue" in this case is whether the term "personal injury" in 42 U.S.C. § 3796(a) includes mental strain.[3] Ms. Yanco recognizes that "personal injury" is not defined in the statute.

---

**3.** We use the term "mental strain" to include stress, strain, post traumatic stress disorder, and depression.

She argues, however, that Congress has effectively spoken to the meaning of "personal injury" because the term has a common meaning that includes mental strain. *See Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 ("Where Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.") (citing *Kelley v. S. Pac. Co.,* 419 U.S. 318, 322–323, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974)). She contends that this common meaning is used in state workmen's compensation laws and in connection with veterans' benefits. Thus, she points to the Massachusetts workmen's compensation law for its inclusion of mental injuries as work related personal injuries. *See In re Fitzgibbons' Case,* 374 Mass. 633, 373 N.E.2d 1174, 1177 (1978) (concluding that the term "personal injury" permits compensation in cases involving mental disabilities causally connected to mental trauma or shock arising out of any aspect of employment). She also points to 38 C.F.R. § 3.304(f) (1997), a regulation promulgated by the Department of Veterans Affairs pursuant to its authority under 38 U.S.C. § 501 (1994). Under § 3.304(f), post traumatic stress disorder may qualify as a service-connected injury.

We are not persuaded by Ms. Yanco's arguments. To begin with, it appears that, as far as state workmen's compensation laws are concerned, the term "personal injury" may or may not be limited to physical injuries. *See, e.g., Demars v.*

*Rickel,* 223 Kan. 374, 573 P.2d 1036, 1040 (1978) (holding that "personal injury" within the meaning of the Kansas workmen's compensation law requires a change in the physical structure of the body); *see also Swan v. Williamson,* 74 Idaho 32, 257 P.2d 552, 555 (1953) (holding that "personal injury" within the meaning of Iowa's workmen's compensation law requires violence to the physical structure of the body). Even Massachusetts, a state that does include mental injuries as part of its workmen's compensation scheme, only includes "mental and nervous disorders arising out of employment where such injuries are the result of physical trauma, no matter how slight the impact." *Fitzgibbons',* 373 N.E.2d at 1177.[4] Finally, analogous regulatory schemes, such as the one relating to veterans' benefits, are simply representative of one possible reading of the term "personal injury." Accordingly, we conclude that Congress has not "directly spoken" to the question of whether the term "personal injury" in 42 U.S.C. § 3796(a) includes mental strain.

■ Turning to the second prong of the *Chevron* analysis, we must determine whether BJA's decision to define "personal injury" as "any traumatic injury," 28 C.F.R § 32.2(e), and then to exclude from the definition of "traumatic injury" stress and strain, 28 C.F.R. § 32.2(g), represents "a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. For the following reasons, we conclude that it does.

In originally promulgating the definitional regulations that are at issue here,

4. In its decision sustaining BJA's denial of Ms. Yanco's claim, the Court of Federal Claims noted: "In the Hearing Officer's determination, he notes that the workmen's compensation laws of approximately 30 states compensate for mental injuries. The reasonable conclusion to be drawn from this assertion is that approximately 20 states do not compensate for mental injuries." 45 Fed.Cl. at 792 n. 11.

the Law Enforcement Assistance Administration ("LEAA"), BJA's predecessor, stated:

> LEAA believes that the definition of "personal injury" in the House Judiciary Committee Reports manifests the Committee's intent to limit coverage to deaths caused by traumatic injuries. The Report language is consistent with the following definition of "trauma[:]" ... "an injury caused by rough contact with a physical object; accidental or inflicted wound." The regulations, accordingly, have defined "traumatic injury" to mean "a wound or other condition of the body caused by external force, including injuries inflicted by bullets, explosives, sharp instruments, blunt objects or other physical blows, chemicals, electricity, climatic conditions, infectious diseases, radiation and bacteria, but excluding stress and strain." ... Deaths caused by traumatic injuries do not therefore include deaths directly attributable to exertion or stress encountered in the performance of duty, unless that stress resulted in or was caused by a traumatic injury that was a substantial factor in the officer's death.

42 Fed. Reg. 23,260 (May 6, 1977).

The legislative history supports the definition of the term "personal injury" in the regulations. The House Judiciary Committee Reports to which LEAA refers, House Reports Nos. 94–1031 and 94–1032 94th. Cong.2d Sess., both contain the following statement:

> [I]t is the Committee's intent that the term "personal injury" shall include all injuries to the body which are inflicted by an outside force, whether or not it is accompanied by physical impact, as well as diseases which are caused by or result from such injuries, but not diseases which arise merely out of the performance of duty. In other words, deaths from occupational diseases alone are not within the purview of this legislation.

H.R.Rep. No. 94–1031, at 4; H.R.Rep. No. 94–1032, at 5.

In the Senate, the bill that was favorably reported by the Judiciary Committee provided a death benefit to the survivor or survivors of an officer who died in the line of duty from "injuries directly and proximately caused by a criminal act or an apparent criminal act." S.Rep. No. 94–816, 94th Cong.2d Sess. at 1, *reprinted in* 1976 U.S.C.C.A.N. 2504. However, an amendment was introduced on the Senate floor, substituting "as the direct and proximate result of a personal injury sustained in the line of duty" for the more limited "criminal act" language. Speaking in support of the amendment, Senator McClellan stated that the bill "is not health insurance; but it does provide for payment if an officer is killed in the line of duty, either by accident or by willful assault by a criminal." 122 Cong. Rec. S11837–38 (daily ed. July 19, 1976) (statement of Sen. McClellan). The amendment passed, and its language was incorporated into the final version of the Act.

The legislative history makes it clear that Congress's intent in enacting the Benefits Act was to provide a death benefit for the survivor or survivors of a law enforcement officer who dies as the result of what one would understand to be some kind of a physical assault or trauma to the body. Thus, the statements in the House Reports that are quoted above refer to "injuries to the body which are inflicted by an outside force." In short, the legislative history points away from an intent on the part of Congress to have the statutory term "personal injury" include mental strain. We

thus conclude that the regulations at 28 C.F.R. §§ 32.2(e) and 32.2(g) which define the term "personal injury" so as to exclude stress and strain represent, in the words of *Chevron,* a "permissible construction of the statute." We therefore reject Ms. Yanco's challenge to the regulations.[5]

■ The only question that remains is whether the decision of the BJA that Officer Yanco's suicide was the result of "stress and strain" within the meaning of 28 C.F.R. § 32.2(g) is supported by substantial evidence. There is abundant evidence in the administrative record that it was mental strain that led Officer Yanco to take his life. The record includes the written statement of Ms. Yanco and her hearing testimony. Ms. Yanco stated that, after the allegation was made against him, her husband withdrew from his family and became irritable and depressed. ("I would awaken during the night and find him gone from our bed. He would be down in the family room on the couch just staring into space or openly weeping.") The record also includes the written statements and hearing testimony of two mental health experts, Dr. James C. Beck and Dr. Laurie W. Raymond. Dr. Beck and Dr. Raymond concluded that, at the time of his death, Officer Yanco was suffering from post traumatic stress disorder and depression. BJA's decision is supported by substantial evidence.

## II.

■ Ms. Yanco makes two additional arguments. As noted above, the Director of BJA concluded that Officer Yanco was not acting "in the line of duty," as required by 42 U.S.C. § 3796(a) when he took his life. The Director also concluded that, even if Officer Yanco's death could be viewed as the result of "traumatic injury" within the meaning of 28 C.F.R. § 32.2(g), benefits would not be payable to Ms. Yanco because of the prohibition in the Benefits Act against paying benefits when an officer's death is intentional. Ms. Yanco challenges the Director's conclusion that Officer Yanco was not acting in the line of duty when he took his life. She also asserts that the Director acted arbitrarily and capriciously in reversing the Hearing Officer's determination that Officer Yanco lacked the intent to bring about his death. The issues of acting in the line of duty and intent only are relevant, however, if a law enforcement officer dies as the result of a "personal injury" within the meaning of the Act. *See* 42 U.S.C. §§ 3796(a) and 3796a. As discussed above, Officer Yanco did not die as the result of such an injury. Ms. Yanco's additional arguments are thus unavailing.

## CONCLUSION

For the foregoing reasons, the decision of the Court of Federal Claims granting

---

5. Our conclusion is consistent with *Smykowski v. United States,* 227 Ct.Cl. 284, 647 F.2d 1103 (1981). That case involved a claim under the Benefits Act by the survivors of a police officer who collapsed and died as the result of a heart attack immediately following a struggle with an individual whom he was seeking to place in custody. The officer did not suffer any direct physical injuries from the struggle, however. The Court of Claims determined that the officer had not died as the result of a "traumatic injury," as defined in the regulations. It therefore sustained the

denial of the claim for death benefits under the Act. Although the appellants in *Smykowski* did not challenge the validity of the regulations defining "personal injury," the court's observation about the regulations is worth noting: "Claimants do not take issue with the agency's position excluding stress, strain, and heart disorders from the coverage of the Act, exclusions which, in any event, are amply justified by the statutory language, legislative history, and medical statistics." 647 F.2d at 1105 (footnotes omitted).

summary judgment in favor of the government and thereby sustaining BJA's denial of Ms. Yanco's claim for death benefits under the Benefits Act is

*AFFIRMED.*

## COSTS

Each party shall bear its own costs.