# United States Court of Appeals for the Federal Circuit

2006-5087

JULIE AMBER-MESSICK,
Administratrix of the Estate of Christopher Kangas, deceased,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Frank W. Daly, Daly & O'Brien, P.C., of Media, Pennsylvania, argued for plaintiff-appellee.

Nancy M. Kim, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Todd M. Hughes, Assistant Director. Of counsel on the brief were Rafael A. Madan, General Counsel, and Gregory C. Brady, Deputy General Counsel, Office of Justice Programs, United States Department of Justice, of Washington, DC.

Appealed from: United States Court of Federal Claims

Judge Marian Blank Horn

# United States Court of Appeals for the Federal Circuit

2006-5087

JULIE AMBER-MESSICK,
Administratrix of the Estate of Christopher Kangas, deceased,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

—————————————

DECIDED: April 17, 2007

—————————————

Before NEWMAN, SCHALL, and BRYSON, Circuit Judges.

Opinion for the court filed by Circuit Judge SCHALL. Circuit Judge NEWMAN dissents.

SCHALL, Circuit Judge.

Julie Amber-Messick is the mother of Christopher Kangas, who was a fourteen-year old "apprentice firefighter" with the Brookhaven, Pennsylvania, Volunteer Fire Department ("Brookhaven Fire Department"). Following her son's death in a traffic accident, Mrs. Amber-Messick submitted a claim to the Department of Justice's Bureau of Justice Assistance ("BJA") seeking death benefits under the Public Safety Officers' Benefits Act of 1976 ("PSOBA" or "Act"), Pub. L. No. 94-430, 90 Stat. 1346 (codified as amended at 42 U.S.C. §§ 3796-3796c (2000)). After BJA denied her claim based on

the conclusion that Christopher was not a "firefighter" under PSOBA, Mrs. Amber-Messick brought suit in the United States Court of Federal Claims. The parties then cross-moved for judgment based upon the administrative record.

The Court of Federal Claims granted judgment on the administrative record in favor of Mrs. Amber-Messick. The court ruled that BJA's denial of benefits was an arbitrary exercise of its authority and held that Mrs. Amber-Messick could recover under PSOBA because Christopher was a "firefighter" who had died "in the line of duty" within the meaning of the statute and implementing regulations. Messick v. United States, 70 Fed. Cl. 319, 332 (2006). Accordingly, the court entered judgment, awarding Mrs. Amber-Messick the sum of $250,000, adjusted in accordance with 42 U.S.C. § 3796(h).

The United States has appealed the Court of Federal Claims' decision. Because we conclude that the court erred in failing to defer to BJA's interpretation of "firefighter," the judgment in favor of Mrs. Amber-Messick is reversed. The case is remanded to the Court of Federal Claims with the instructions that it enter judgment in favor of the United States and dismiss the complaint.

BACKGROUND

I.

PSOBA provides a one-time cash payment to survivors of public safety officers who die in the line of duty. The program is administered by BJA. In relevant part, section 3796(a) states:

> In any case in which the Bureau of Justice Assistance . . . determines, under regulations issued pursuant to this part that a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty, the Bureau shall pay a benefit of $ 250,000 . . . as follows:

(1) if there is no surviving child of such officer, to the surviving spouse of such officer;

(2) if there is a surviving child or children and a surviving spouse, one-half to the surviving child or children of such officer in equal shares and one-half to the surviving spouse;

(3) if there is no surviving spouse, to the child or children of such officer in equal shares;

(4) if there is no surviving spouse or surviving child, to the individual designated by such officer as beneficiary under such officer's most recently executed life insurance policy, provided that such individual survived such officer; or

(5) if none of the above, to the parent or parents of such officer in equal shares.

42 U.S.C. § 3796(a) (2000) (amended 2006).

For a survivor or survivors to be entitled to payment, the public safety officer must have suffered a "personal injury" within the meaning of the Act, the injury must have been suffered "in the line of duty," and the death must have been "the direct and proximate result" of the personal injury. Id.; see also Cassella v. United States, 469 F.3d 1376, 1378 (Fed. Cir. 2006); Yanco v. United States, 258 F.3d 1356, 1359 (Fed. Cir. 2001). The 2000 version of the Act, applicable here, defined "public safety officer" as "an individual serving a public agency in an official capacity, with or without compensation, as a law enforcement officer, as a firefighter, as a chaplain, or as a member of a rescue squad or ambulance crew." 42 U.S.C. § 3796b(8) (2000) (current version at 42 U.S.C. 3796b(9) (2006)). The Act additionally defined "firefighter" as "includ[ing] an individual serving as an officially recognized or designated member of a legally organized volunteer fire department." 42 U.S.C. § 3796b(4) (2000 & Supp. II 2002).

The Act also sets forth specific restrictions upon entitlement. Section 3796a states in pertinent part:

No benefit shall be paid under this subchapter—

(1) if the death or catastrophic injury was caused by the intentional misconduct of the public safety officer or by such officer's intention to bring about his death or catastrophic injury;
. . . .

(3) if the public safety officer was performing his duties in a grossly negligent manner at the time of his death or catastrophic injury.

42 U.S.C. § 3796a (2000).

## II.

Christopher Kangas was a fourteen-year-old "apprentice firefighter" with the Brookhaven Fire Department. Messick, 70 Fed. Cl. at 321. The Brookhaven Fire Department authorized fourteen- and fifteen-year old apprentice firefighters to participate in training activities; to provide first aid care to victims at emergency scenes; to engage in canteen (food service) activities; to participate in a support capacity in connection with search and rescue operations, wild fires, hazardous materials incidents, and water supply operations; and to assist with clean-up activities, such as rolling hoses, putting away portable tools, and removing debris outside of fire buildings and collapse zones. Christopher, who had been an apprentice firefighter since May 15, 2001, was issued official firefighting equipment and had completed 58.5 hours of in-house training in a variety of areas related to firefighting. Id.

On May 4, 2002, an automobile struck Christopher at an intersection. At the time of the accident, Christopher was riding his bicycle from his house to the Brookhaven fire station in response to a fire alarm. Id. at 321-22. As a result of the accident,

Christopher sustained serious injuries and died.  Id. at 322.  According to the November 20, 2002 report of the National Institute for Occupational Safety and Health ("NIOSH"), Christopher was not wearing a helmet and crossed the intersection without stopping at the stop sign.

III.

On May 28, 2002, Mrs. Amber-Messick filed a claim with BJA for PSOBA death benefits.  Id. at 321.  On September 11, 2002, BJA issued an initial determination denying the claim.  Id.  BJA determined that Christopher "was a trainee but did not possess authority to act as an official firefighter" and thus was not a "public safety officer" pursuant to PSOBA.  Id.  BJA noted that Christopher was only permitted to participate in training activities, to provide first aid care, to assist with clean-up activities, to support canteen activities, and to participate in a support capacity for operations such as searches and rescues. BJA also noted that Christopher "was not permitted to operate equipment or assist with fire suppression at fire scenes or enter hazardous atmospheres."  Id.

On March 4, 2003, Mrs. Amber-Messick sought reconsideration of the initial denial of benefits. Id. In accordance with BJA regulations, the matter was referred to a Hearing Officer, who received evidence and held a hearing.[1] In his April 26, 2004 decision, the Hearing Officer sustained the initial denial of benefits based on his conclusion that Christopher was not a "firefighter" under PSOBA. Id. at 322. The Hearing Officer acknowledged that PSOBA did not define "firefighter" as one "engaged in the suppression of fires," but concluded that Congress intended the term "firefighter" to mean an individual "authorized to actively engage in the suppression of fires." Id. The Hearing Officer based his conclusion on the plain meaning of the term "firefighter"[2] as well as his interpretation of legislative intent.[3] Id. Additionally, the Hearing Officer cited to the definition of "line of duty" in BJA's implementing regulations[4] to support his

---

[1] "A claimant may, within thirty (30) days after notification of ineligibility by the Bureau, request the Bureau to reconsider its finding of ineligibility. The Bureau shall provide the claimant the opportunity for an oral hearing which shall be held within 60 days after the request for reconsideration." 28 C.F.R. § 32.24(a) (2002) (current version at 28 C.F.R. § 32.29 (2006)).

[2] The Hearing Officer cited Webster's Dictionary (10th ed.) for the definition of "firefighter" as a "person who fights fires." Messick, 70 Fed. Cl. at 322.

[3] The Hearing Officer stated that "[t]his plain meaning of 'firefighter' was apparently so obvious that Congress did not bother to add any further definition." The Hearing Officer further explained that:

> The original House Bill for the Firefighters Benefits Act of 1975 (H.R. 365), which later evolved into the PSOB Act of 1976, included in its definition of "eligible firefighter" an individual ". . . actually and directly engaged in fighting a fire; or otherwise engaged in performance of his duty where the activity is determined by the Administration [LEAA] to be potentially dangerous to the firefighter." See Cong. Rec. H 3741, Apr. 30, 1976.

[4] 28 C.F.R. § 32.2(c)(1) defines "line of duty" as "any action which an officer whose primary function is crime control or reduction, enforcement of the criminal law, or suppression of fires is obligated or authorized by rule, regulations, condition of employment or service, or law to perform." 28 C.F.R. § 32.2(c)(1) (2002) (current version at 28 C.F.R. § 32.3 (2006)).

conclusion that one must be authorized to fight or suppress fires to be a "firefighter" under the statute.  Id.  The Hearing Officer also noted that under Pennsylvania law,[5] fourteen- and fifteen-year old junior firefighters are prohibited from being directly involved in the suppression of fires.  Id.

On June 29, 2004, in accordance with 28 C.F.R. 32.24(i)(1)(i), Mrs. Amber-Messick requested that BJA reconsider the Hearing Officer's denial of death benefits. See 28 C.F.R. § 32.24(i)(1) (2002) ("A claimant determined ineligible by a hearing officer . . . may, within 30 days after notification of the hearing officer's determination: (i) request the BJA Director to review the record and the hearing officer's determination . . . .") (current version at 28 C.F.R. § 32.46 (2006)).  On April 28, 2005, the Director of BJA, in the Final Agency Decision, affirmed the Hearing Officer's denial of benefits based on the conclusion that Christopher was not a "firefighter" or "public safety officer" within the meaning of PSOBA.  Id. at 323.  The Director additionally concluded that "[e]ven if Christopher were a 'firefighter' within the meaning of the PSOB Act (which he was not), his tragic death did not occur in the line of duty, as defined in the PSOB regulations, because Pennsylvania law . . . did not obligate or authorize him to engage in fire-fighting or fire-suppression activity."  Id.

---

[5]     The Pennsylvania Administrative Code expressly prohibits fourteen- and fifteen-year olds from "(i) Rid[ing] an official vehicle to the scene of a fire[,] (ii) Participat[ing] in any fire fighting activities."  34 Pa. Code § 11.67(a)(5).
Additionally, the Pennsylvania Child Labor Law expressly limits minors under sixteen years of age to the following activities: "(1) Training[;] (2) First aid[;] (3) Clean-up service at the scene of a fire, outside the structure, after the fire has been declared by the fire official in charge to be under control[;] (4) Coffee wagon and food services."  43 Pa. Cons. Stat. § 48.3(b).  The Pennsylvania Child Labor Law further explicitly prohibits minors under sixteen years of age from "(1) Operat[ing] high pressure hose lines, except during training activities; (2) Ascend[ing] ladders, except during training activities; or (3) Enter[ing] a burning structure."  43 Pa. Cons. Stat. § 48.3(c).

On June 27, 2005, Mrs. Amber-Messick filed a complaint in the Court of Federal Claims to challenge BJA's denial of her claim under PSOBA.[6]  As noted above, the parties, in due course, cross-moved for judgment based upon the administrative record.  The court concluded that BJA's denial of death benefits was "arbitrary and capricious and founded on an unreasonably restrictive reading of the words of PSOBA and implementing regulations."  Id. at 331.  The court found that Christopher was a "firefighter" who died in the "line of duty" because Christopher's "'primary function' was to be a part of the team that engaged in 'the suppression of fires.'"  Id.  The court therefore granted Mrs. Amber-Messick's motion for judgment on the administrative record and denied the government's cross-motion.  Id. at 332.

The United States timely appealed the judgment of the Court of Federal Claims to this court on May 26, 2006.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

I.

Our review of BJA's denial of a claim for death benefits is limited to three inquiries: (1) whether there has been substantial compliance with statutory requirements and provisions of implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the government officials involved; and (3) whether substantial evidence supports the decision denying the claim.  Yanco, 258 F.3d at 1362; Chacon v. United States, 48 F.3d 508, 511 (Fed. Cir. 1995).  We review the judgment of

---

[6]  The Court of Federal Claims had jurisdiction over the suit under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000).

the Court of Federal Claims de novo, applying this deferential standard anew. Greeley v. United States, 50 F.3d 1009, 1010-11 (Fed. Cir. 1994).

The government argues on appeal that we should defer to BJA's permissible construction of "firefighter" in line with Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984). The government contends that because the term "firefighter" is ambiguous with respect to whether it covers a minor apprentice firefighter, we must inquire, under step two of the Chevron analysis, whether BJA's conclusion that Christopher was not a firefighter because he was not authorized to fight fires was reasonable. According to the government, BJA's interpretation of "firefighter" was permissible in light of Pennsylvania state law; the ordinary, common meaning of the term; and the legislative history of PSOBA.

Additionally, the government makes two alternative arguments. First, the government argues that even if Christopher was a "firefighter" pursuant to PSOBA, BJA's interpretation of "line of duty" is reasonable and therefore we should uphold its determination that Christopher did not die in the "line of duty." Second, the government contends that even if Christopher was a "firefighter" who died in the "line of duty," the government is entitled to a remand of the case for a determination by BJA as to whether the circumstances of Christopher's death—his failure to wear a helmet and to stop before entering the intersection—constituted intentional misconduct or gross negligence so as to preclude the payment of a benefit under the statute. See 42 U.S.C. § 3796a.

In response to the government's arguments, Mrs. Amber-Messick argues that PSOBA is clear and unambiguous in its broad definition of "firefighter." Further, she contends that even if the term "firefighter" is ambiguous, BJA's interpretation of the term

is arbitrary and capricious, given that the statute and regulations are easily understood without adding duty-specific limitations. Mrs. Amber-Messick also directs our attention to the fact that she received benefits under the Pennsylvania Emergency Law Enforcement Personnel Death Benefits Act, 53 Pa. Stat. Ann. § 891, as support for her argument that she should have received benefits under PSOBA. Specifically, Mrs. Amber-Messick argues that 38 C.F.R. § 32.5[7] requires BJA to give "substantial weight" to state and local agencies' findings.

With respect to the government's "line of duty" alternative argument, Mrs. Amber-Messick contends that because Christopher's primary function was to be a part of a team that engaged in the "suppression of fires," Christopher died in the "line of duty." Finally, Mrs. Amber-Messick urges that there are three reasons why we should reject the government's request for a remand. First, she notes that, under 28 U.S.C. § 1491(a)(2),[8] the lower court's decision whether to remand is discretionary. Second, she contends that the record contains insufficient evidence to support a determination of intentional misconduct or gross negligence, given that the NIOSH report is the only item

---

[7] The regulation states:

The Bureau will give substantial weight to the evidence and findings of fact presented by State, local, and Federal administrative and investigative agencies. The Bureau will request additional assistance or conduct its own investigation when it believes that the existing evidence does not provide the Bureau with a rational basis for a decision on a material element of eligibility.

38 C.F.R. § 32.5.

[8] Section 1491(a)(2) provides in relevant part: "[The Court of Federal Claims] shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2).

in the record that mentions Christopher's failure to wear a helmet and to stop at the stop sign. Third, Mrs. Amber-Messick argues that the failure to wear a helmet and to stop at the stop sign does not rise to the level of intentional misconduct or gross negligence.

II.

We hold that the Court of Federal Claims erred in granting judgment on the administrative record in favor of Mrs. Amber-Messick and in denying judgment on the administrative record in favor of the United States. We agree with the government's argument that BJA's construction of the term "firefighter" is permissible.

In <u>United States v. Mead Corp.</u>, the Supreme Court explained that:

> [A]dministrative implementation of a particular statutory provision qualifies for <u>Chevron</u> deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority. Delegation of such authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable congressional intent.

533 U.S. 218, 226 (2001). The Supreme Court further noted, "We have recognized a very good indicator of delegation meriting <u>Chevron</u> treatment in express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed." <u>Id.</u> at 229. Here, because Congress expressly authorized BJA to issue regulations interpreting PSOBA and to make determinations as to eligibility for benefits, we conclude that Congress intended for a BJA pronouncement to have the "force of law." <u>See</u> 42 U.S.C. § 3796c ("The Bureau is authorized to establish such rules, regulations, and procedures as may be necessary to carry out the purposes of this subchapter."). We therefore will defer to

BJA's interpretation of "firefighter," so long as it is reasonable in accordance with Chevron.

When Chevron deference applies, the court must undertake a two-step inquiry. First, the court must determine "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843.

Here, the "precise question at issue" is whether the term "firefighter" in 42 U.S.C. § 3796b(4) covers a minor prohibited by law from engaging in certain firefighting activities. In that regard, we are not persuaded by Mrs. Amber-Messick's argument that PSOBA is clear and unambiguous in its broad definition of "firefighter." Mrs. Amber-Messick argues that neither the statute nor the regulations supply age or duty requirements or add other limitations to the definition of "firefighter." We think, however, that this argument indicates Congress has not directly spoken to the precise question of whether the term "firefighter" covers a minor apprentice firefighter. We also think Mrs. Amber-Messick's argument that the drafters of PSOBA chose to use "includes" rather than "means" or "is defined" in the definition of "firefighter," 42 U.S.C. § 3796b(4),[9] because they intended for PSOBA to have a broader interpretation fails. In our view, Congress used the word "includes" in order to ensure that the Act covered volunteer

---

[9] As noted above, the statute states that the term firefighter "includes an individual serving as an officially recognized or designated member of a legally organized volunteer fire department." 42 U.S.C. § 3796(b)(4).

firefighters as well as professional firefighters. H.R. Rep. No. 94-1031, at 4 (1976) ("The bill defines 'firemen' to include volunteer as well as professional firemen."). If Congress had defined "firefighter" to "mean an individual serving as an officially recognized or designated member of a legally organized volunteer fire department," professional firefighters would have been excluded from statutory coverage. Accordingly, we conclude that Congress has not "directly spoken" to the question of whether the term "firefighter" in 42 U.S.C. § 3796b(4) covers a minor apprentice firefighter prohibited by law from engaging in certain firefighting activities.

Under the second prong of the Chevron analysis, we must determine whether BJA's decision to exclude from the definition of "firefighter" a minor apprentice firefighter not authorized to fight fires represents "a permissible construction of the statute." Chevron, 467 U.S. at 843. We conclude that BJA's interpretation of "firefighter" as one who is "authorized to actively engage in the suppression of fires" is permissible based on the ordinary meaning of the term "firefighter" as well as the legislative history of the Act.

The ordinary, common meaning of the term "firefighter" as "a person who fights fires" is consistent with BJA's interpretation of "firefighter." See Merriam-Webster's Collegiate Dictionary (10th ed. 2002); see also The New Shorter Oxford English Dictionary (1993) ("a person whose task is to extinguish fires"); Webster's Third New Int'l Dictionary (1981) ("one who fights fires"). We agree with the government's argument that there is no indication in the Act itself of any legislative intent to depart from this ordinary meaning. The legislative history, moreover, supports BJA's interpretation of the term "firefighter" in accordance with its ordinary meaning. The

House Judiciary Committee Report No. 94-1031 contains the following statement: "Since fire fighting has been determined to be one of the most hazardous professions, the Committee is of the opinion that coverage should extend to all activities performed by firemen when they are actually and directly engaged in fighting fires." H.R. Rep. No. 94-1031, at 4 (1976). We thus conclude that BJA's interpretation of the term "firefighter" as one who is "authorized to actively engage in the suppression of fires" is a "permissible construction of the statute," and is not, as argued by Mrs. Amber-Messick, arbitrary and capricious.

Based on our conclusion that BJA's interpretation of "firefighter" is permissible, the only remaining question is whether BJA's decision that Christopher is not "authorized to actively engage in the suppression of fires" and therefore not a "firefighter" pursuant to PSOBA is reasonable. According to Pennsylvania state law, as a minor under sixteen years of age, Christopher's activities were expressly limited to: (1) training, (2) first aid, (3) clean-up, and (4) providing coffee wagon and food services. 43 Pa. Cons. Stat. § 48.3(c). The authorization to engage in these limited activities does not equate to the authorization "to actively engage in the suppression of fires." Further, given that Pennsylvania state law prohibits minors under the age of sixteen from operating high pressure hose lines except during training, from ascending ladders except during training, from entering a burning structure, 43 Pa. Cons. Stat. § 48.3(c), and from riding an official vehicle to the scene of a fire and participating in any fire fighting activities, 34 Pa. Code § 11.67(a)(5), we conclude that BJA's decision that Christopher was not "authorized to engage in the suppression of fires" was reasonable.

Additionally, we find unpersuasive Mrs. Amber-Messick's contention that the fact she received benefits under the Pennsylvania Emergency Law Enforcement Personnel Death Benefits Act supports her claim under PSOBA. BJA's implementing regulation, 28 C.F.R. § 32.5, only applies to findings of fact and does not apply to the ultimate conclusion of whether a claimant is entitled to a benefit.[10] See Demutiis v. United States, 291 F.3d 1373, 1379 (Fed. Cir. 2002). BJA was not required to give "substantial weight" to the state agency's legal conclusion that Mrs. Amber-Messick was entitled to receive death benefits under state law.

In sum, we hold that BJA's interpretation of the term "firefighter" as one who is "authorized to actively engage in the suppression of fires" is permissible in light of the ordinary, common meaning of the term "firefighter" and the legislative history of PSOBA. We also hold that BJA did not err in its determination that Christopher was not a "firefighter" under PSOBA, given that Pennsylvania state law does not authorize him to participate in firefighting activities and, instead, expressly limits his activities to non-firefighting activities.

Finally, in view of our disposition of the appeal based upon our holding that Christopher was not a "firefighter" pursuant to PSOBA, we do not need to reach the government's two alternative arguments noted above.

CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims in favor of Mrs. Amber-Messick is reversed. The case is remanded to the Court of Federal

---

[10] As noted, the regulation states in pertinent part that BJA "will give substantial weight to the evidence and findings of fact presented by State, local, and Federal administrative and investigative agencies." 28 C.F.R. § 32.5.

Claims, which is instructed to enter judgment in favor of the United States and to dismiss the complaint.

COSTS

Each party shall bear its own costs.

REVERSED and REMANDED

# United States Court of Appeals for the Federal Circuit

2006-5087

JULIE AMBER-MESSICK,
Administratrix of the Estate of Christopher Kangas, deceased,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

NEWMAN, Circuit Judge, dissenting.

Christopher Kangas, age 14, was an apprentice firefighter, also called a junior firefighter, at Brookhaven Fire Department No. 1. He was killed in an accident on his bicycle while responding to a fire call. His family requested the statutory compensation that is granted, in accordance with the Public Safety Officers' Benefits Act (PSOBA), to families of firefighters and other public safety officers who die in the line of duty. The family also sought to recognize his memory by inscription on the National Fallen Firefighters Foundation's Honor Roll of firefighters who die in service; this recognition was denied after the government denied firefighter benefits under the PSOBA.

The PSOBA definition states: "'Firefighter' includes an individual serving as an officially recognized or designated member of a legally organized fire department . . . ." 42 U.S.C. §3796b(4). Volunteer firefighters, serving as needed and without compensation, are included. Id. at §3796b(8)(A) (a "'public safety officer' means . . . an individual serving a

public agency in an official capacity, with or without compensation, as a law enforcement officer, as a firefighter, as a chaplain, or as a member of a rescue squad or ambulance crew").

The PSOBA is administered by the Department of Justice through its Bureau of Justice Assistance (BJA). The BJA held that Kangas was not a "firefighter" because as a junior firefighter under the age of 16 he could not, in accordance with Pennsylvania law, engage in certain firefighting activities. Firefighters under the age of sixteen are prohibited, in Pennsylvania, from entering burning buildings and from climbing ladders or operating high-pressure hose lines other than during training.

The Court of Federal Claims, reviewing the testimony of Pennsylvania firefighting officials, agreed with these officials that Kangas was part of the firefighting team. At the hearing before the BJA, the Brookhaven Fire Chief, Rob Montella, testified as follows:

> The junior firefighter is a -- it's part of the team. They are . . . just as much a part of being a firefighter as anybody else out there. They do all the jobs that they need to do. They help out. The jobs that they do are very important. If they're not there, somebody else has to do the job. If you don't have the manpower them jobs aren't getting done. They're getting done by them other guys that are doing different jobs that they're allowed to do. So the junior firefighter is a vital part of the fire department.

The Pennsylvania State Fire Commissioner also testified, stating that the Pennsylvania death benefits statute makes no distinction between junior/apprentice firefighters and other firefighters who die in the line of duty, and that Kangas had been so recognized and placed on the state's Honor Roll of fallen firefighters. The Fire Commissioner testified that the state death benefits statute makes no distinction among junior, apprentice, or other firefighters and that age or service capacity are not barriers to state death benefits.

The Court of Federal Claims observed that the federal statute does not exclude apprentice firefighters who die under conditions in which a non-apprentice would be recognized.[1] The testimony of the Brookhaven Fire Chief and Pennsylvania Fire Commissioner was clear that the duties performed by the apprentice firefighters freed the senior firefighters for other tasks, and that the apprentices' tasks are a necessary and integral part of the team effort in fighting fires.

The Court of Federal Claims summarized the evidence as follows:

Christopher had been issued official firefighter equipment. He had completed 58.5 hours of in-house training and had trained in twenty-two different areas related to firefighting, including rescue operations, the functions of an air pack, electronics, carbon monoxide detection and hose rolling. Christopher also was certified in CPR and had responded to twenty-four house drills. The Brookhaven Fire Department had authorized Christopher to be part of the firefighting team by participating at the scene of a fire, including bringing out portable equipment and fire hoses, providing food, drink and first aid to the other firefighters, and cleaning up after fires that were under control. After Christopher's death, the Brookhaven, Pennsylvania, Volunteer Fire Department added his name to the honor roll of its deceased members. Christopher was the only person on the honor roll to have died in what the Department determined was "the line of duty."

70 Fed. Cl. at 321. The Court concluded that Kangas' service was within the scope of the PSOBA, whose purpose was to encourage and recognize persons who formally participate in public safety activities.

---

[1] It is undisputed that accidental death while traveling to or from a fire is deemed compensable; indeed, a large number of such unfortunate accidents occur. "According to the U.S. Fire Administration, of the 106 fire fighters who died in the line of duty in 2005, 26 were the result of vehicle accidents." http://www.iaff.org/media/021506health.pdf.

On appeal by the United States, my colleagues now endorse the federal government's position that Christopher Kangas was not a "firefighter" and that his death warrants neither compensation nor recognition. This position contravenes the statutory purposes, summarized in the legislative history as including increasing the morale of fire departments, assisting in recruiting efforts, showing appreciation for public service officers, and alleviating economic and emotional burdens placed upon public servants and their families. The Senate Committee Report accompanying amendments in 2000 explained that the national goal "to reduce loss of life and property and protect the nation's critical infrastructure from all types of hazards, through a comprehensive, risk-based emergency management program . . ." with a broad mission focusing on four areas: preparedness (e.g., emergency planning and training), mitigation, response, and recovery. S. Rep. 106-295 (2000) at 1-2, the Disaster Mitigation Act of 2000, 114 Stat. 1552, Pub. L. No. 106-390. My colleagues' reliance on Christopher Kangas' exclusion from some senior firefighting activities as the basis for barring his recognition as a fallen firefighter is in direct conflict with the statutory purpose of recognizing the role of the firefighter and others serving the public.

The analogous Pennsylvania Emergency Law Enforcement Personnel Death Benefits Act, 53 P.S. §891 et seq. states, as does the PSOBA, that: "This Act shall be broadly construed to grant benefits to firefighters . . . for deaths related to the performance of their duties." 53 P.S. §892.1. Under PSOBA regulation 28 C.F.R. §32.5 the BJA must give "substantial weight to evidence and findings of fact" presented by state or local agencies. Accordingly, when Pennsylvania has recognized Christopher Kangas as a fallen firefighter under a statute with almost identical language to the federal statute, the United States should not take a contrary position without exceptional good reason. See 28 C.F.R.

2006-5087                                                                                                          4

§32.4 ("[the BJA] shall resolve any reasonable doubt arising from the circumstances of the officer's death . . . in favor of the payment of the death . . . benefit"); Davis v. United States, 46 Fed. Cl. 421, 427 (2000). See also Demutiis v. United States, 48 Fed. Cl. 81 (2000) (the PSOBA must be construed in accord with its legislative intent and applicable canons of construction "both of which compel a conclusion that Congress desired this statute to be applied liberally"), aff'd as modified, 291 F.3d 1373 (Fed. Cir. 2002).

Although the United States urges Chevron deference to the interpretation of the BJA, the term "firefighter" in the PSOBA is not ambiguous. An interpretation that excludes apprentice firefighters who die while serving as apprentices, departs so markedly from the statutory purpose as to negate deference. See Whitman v. American Trucking Ass'ns, 531 U.S. 457, 485 (2001) (judicial deference is not warranted where an agency "construe[d] the statute in a way that completely nullifies textually applicable provisions meant to limit [the agency's] discretion").

The PSOBA does not limit "firefighter" to exclude all persons who do not enter burning buildings. Observing the various federal laws with firefighter provisions, the civil service law as to federal employees is explicit that a "firefighter" can be an administrator or supervisor who is not "actively engaged in the suppression of fires" -- the definition adopted by my colleagues. See 5 U.S.C. §8331(21). However, according to the BJA's interpretation, an administrator or supervisor is not a "firefighter."

The Court of Federal Claims correctly concluded that apprentice firefighters are within the statutory purposes and entitled to the death benefits of the PSOBA:

> In conclusion Christopher was a recognized apprentice "firefighter" of the Brookhaven Volunteer Fire Department. He was authorized to attend the scene of a fire, offload equipment, attach non-pressurized hoses to water

> sources, administer first aid to victims, assist in food services, roll hoses after a fire, remove debris, provide support at hazardous materials scenes and participate in search and rescue operations. Christopher engaged in activities involved in the "suppression of fires." He was a "firefighter" in the ordinary sense of the word.

70 Fed. Cl. at 331. The exclusion of apprentices who are killed in the line of duty is inimical to the purpose of this statute that was designed to encourage and enlarge such public service. The PSOBA "should not be applied grudgingly, but rather should be construed liberally to avoid frustration of its beneficial legislative purposes." Bice v. United States, 72 Fed. Cl. 432 (2006). See Balt. & Phila. Steamboat Co. v. Norton, 284 U.S. 408, 414 (1932) (remedial laws "are deemed to be in the public interest and should be construed liberally in furtherance of the purpose for which they were enacted and, if possible, so as to avoid incongruous or harsh results") (citations omitted).

Logic and justice add their weight to the plain reading of this statute. The federal restriction of "firefighter" to exclude apprentices who die in the line of duty is untenable, and in striking contrast to Pennsylvania's recognition of the death of such apprentices. From my colleagues' endorsement of this statutory interpretation I must, respectfully, dissent.