NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-8003

ANGELA CURTIS, Widow of
KEITH ALLEN CURTIS, Deceased,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

David J. Cooper, Cooper & Bender, P.C., of Tecumseh, Michigan, for petitioner.

Antonia R. Soares, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With her on the brief were Michael F. Hertz, Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Brian M. Simkin, Assistant Director.  Of counsel on the brief were Rafael A. Madan, General Counsel, Jason P. Cooley, Senior Litigation Counsel, and Matthew T. Scodellaro, Attorney Advisor.

Appealed from:  Public Safety Officers' Benefits

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-8003

ANGELA CURTIS, Widow of
KEITH ALLEN CURTIS, Deceased,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

On petition for review of a decision of the Bureau of Justice Assistance in PSOB Claim No. 2004-199.

_____

DECIDED: August 4, 2009

_____

Before MICHEL, <u>Chief Judge</u>, LOURIE, and RADER, <u>Circuit Judges</u>.

PER CURIAM.

The Department of Justice's Bureau of Justice Assistance (BJA) denied the claim of Angela Curtis and her two minor children (Claimants) for benefits under the Public Safety Officers' Benefits Act (the PSOB Act), 42 U.S.C. §§ 3796. Because the BJA correctly determined that Mrs. Curtis's deceased husband did not suffer the type of "personal injury" contemplated by the PSOB Act, this court affirms.

I.

The University of Michigan employed Mr. Keith Curtis as a police officer. One night in September 1997, Officer Curtis responded to a report of a stabbing on campus. When Curtis arrived, he ordered the perpetrator to release the weapon. The perpetrator

proceeded to stab the victim. Curtis fired two rounds at the perpetrator. Both the perpetrator and the victim later died from their injuries.

Officer Curtis was later diagnosed by various psychologists with post-traumatic stress disorder (PTSD) as a result of this incident. In 2000, Curtis also witnessed a suicide on campus – another traumatic incident. In April 2000, Curtis stopped working due to severe PTSD.

Two months after his last day of work, Curtis was diagnosed with leukemia. Despite two bone marrow transplants, he died from leukemia complications in January 2002. The cause of death on his death certificate reads "Pneumonitis," a consequence of "Acute Myelogenous Leukemia."

Claimants, Officer Curtis's survivors, filed a claim for death benefits under the PSOB Act, which provides a one-time cash payment to survivors of "a public safety officer [who] has died as the direct and proximate result of a personal injury sustained in the line of duty." 42 U.S.C. § 3796(a). According to Claimants and their medical expert, Curtis's PTSD reduced his immune system's effectiveness and impaired his body's ability to recognize and destroy cancer cells.

In August 2004, the Public Safety Officers' Benefits (PSOB) Office issued an initial determination denying benefits on the grounds that PTSD and related depression do not constitute an "injury" under the PSOB Act. Relying on this court's decision in Yanco v. United States, 258 F.3d 1356 (Fed. Cir. 2001), the PSOB Office concluded that mental injuries such as PTSD are encompassed by the term "stress and strain," which is expressly excluded from coverage under the PSOB Act's implementing regulations.

In September 2004, Claimants appealed this determination to a hearing officer under 28 C.F.R. § 32.24. Claimants presented testimony from Dr. Frank M. Ochberg, a psychiatrist, who opined that PTSD and depression increased Mr. Curtis's risk of succumbing to cancer. However, in response to the hearing officer's question as to whether the current medical literature recognizes that PTSD and depression are "risk factors" rather than "causal factors" for cancer, Dr. Ochberg responded affirmatively.

In April 20, 2005, the hearing officer issued a determination also finding that Curtis's survivors were not eligible to receive PSOB benefits. On January 10, 2006, Claimants appealed to the BJA Director under 28 C.F.R. § 32.24(h). On September 1, 2006, the BJA submitted the case for review by independent medical examiners at the Armed Forces Institute of Pathology (AFIP). The BJA posed the following three questions to the AFIP examiners:

1)     Did the decedent suffer a "traumatic injury" as defined under the PSOB regulations?
2)     What role does post traumatic stress disorder (PTSD) play in leukemia? Is PTSD causally related to leukemia?
3)     What role did PTSD play in the death of the decedent?

In February 2007, AFIP responded to the BJA's questions, essentially agreeing with the BJA's initial determination and hearing officer's determination. With regard to the first question, the AFIP examiners stated that Officer Curtis had not suffered a "traumatic injury" under PSOB regulations. Regarding the second question, AFIP stated: "The physiologic response to stressful situations, whether acute or chronic, to date has no scientific evidence of any causative linkage to the development of the leukemia." (emphasis added). Finally, in response to the third question, the examiners concluded that "PTSD did not play any role in the death of the decedent."

On October 21, 2008, the BJA Director issued a final decision rejecting Claimant's claim for compensation. The Director found that Officer Curtis had not sustained the type of line-of-duty injury that was compensable under the PSOB Act. This court has jurisdiction over Claimant's timely appeal from the BJA's final decision under 42 U.S.C. § 3796c-2.

II.

Judicial review of BJA's denial of a claim for death benefits under the PSOB Act is limited to three inquiries: "(1) whether there has been substantial compliance with statutory requirements and with the requirements of implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the government officials involved; and (3) whether the decision denying the claim is supported by substantial evidence." Yanco, 258 F.3d at 1362.

The question of whether the BJA properly interpreted the PSOB Act to preclude compensation for Officer Curtis's survivors presents an issue of statutory interpretation, which this court reviews without deference. Doyon, Ltd. v. United States, 214 F.3d 1309, 1314 (Fed. Cir. 2000).

The PSOB Act requires the BJA to pay a benefit of $250,000 to survivors of a public safety officer who has "died as the direct and proximate result of a personal injury sustained in the line of duty." 42 U.S.C. § 3796(a). BJA has promulgated regulations to implement the PSOB Act. In the regulations, "personal injury" is defined as "any traumatic injury, as well as diseases which are caused by or result from such injury, but not occupational diseases." 28 C.F.R § 32.2(e). In turn, "traumatic injury" is defined as "a wound or a condition of the body caused by external force, including injuries inflicted

by bullets, explosives, sharp instruments, blunt objects or other physical blows, chemicals, electricity, climatic conditions, infectious diseases, radiation, and bacteria, but excluding stress and strain." 28 C.F.R. § 32.2(g) (emphasis added).

In Yanco, this court directly considered the question at issue in the instant case – whether the term "personal injury" in the PSOB Act includes mental strains such as PTSD and depression. This court answered the question in the negative, concluding that the BJA's regulations excluding "stress and strain" from the definition of compensable personal injuries represented a "permissible construction of the statute." Yanco, 258 F.3d at 1365 (quoting Chevron U.S.A., Inc. v. Nat'l Res. Defense Council, 467 U.S. 837, 843 (1984)). This court determined that "Congress's intent in enacting the Benefits Act was to provide a death benefit for the survivor or survivors of a law enforcement officer who dies as the result of what one would understand to be some kind of a physical assault or trauma to the body." Id. at 1364. Indeed, "the legislative history points away from an intent on the part of Congress to have the statutory term 'personal injury' include mental strain." Id.

Claimants attempt to differentiate this case from Yanco by arguing that, unlike Yanco, "the result of the traumatic incident giving rise to this claim was not merely 'stress or strain,' excluded by the regulations." Appellant's Br. 9. Claimants point out that the decedent in Yanco committed suicide as a result of stress suffered in the line of duty, whereas in their case, Officer Curtis's demise "was the result of the physical impact of a traumatic incident occurring in the line of duty." Id. at 10.

Claimants' argument makes a distinction without a difference. Yanco stands for the broad proposition that the PSOB Act only provides compensation for survivors of

public safety officers who die as the result of a _physical_ assault or trauma suffered on the job. In this case, Claimants present an attenuated theory of "injury" whereby Officer Curtis died from leukemia caused by a suppressed immune system, which in turn was caused by PTSD, which in turn was caused by his exposure to two traumatic on-the-job incidents. The record contains no evidence that Officer Curtis suffered a "wound or a condition of the body caused by external force," which this court in _Yanco_ found to be a prerequisite for a compensable claim under the PSOB Act.

In short, claimants have offered no evidence that Officer Curtis suffered any physical injury at all during the course of his duties. Further fatal to Claimants' appeal is the BJA's factual conclusion that Claimants did not establish that it is more likely than not that Officer Curtis's duty-related stresses were the direct and proximate cause of his death from leukemia. Even if the mental strain of the two traumatic incidents at the University of Michigan constituted a "personal injury" within the meaning of the statute, the BJA's factual conclusion, in light of the independent analysis performed by medical examiners at AFIP, is amply supported by substantial evidence.

As this court stated in _Hawkins v. United States_, "the purpose of the PSOBA was to compensate the family of an officer who died as a result of a criminal act or apparent criminal act, as well as to provide incentive to those individuals who would expose themselves to the _physical risks and hazards inherent in crime fighting_." 469 F.3d 993, 1001 (Fed. Cir. 2006) (internal quotation marks and citation omitted) (emphasis added). As the BJA Director stated in his final decision, "the sequelae to the post-traumatic stress are irrelevant to [an] analysis of the claim, because the only thing presented by

the Claimants that might theoretically constitute an injury does not actually qualify as an 'injury' within the meaning of the PSOB Act and its implementing regulations . . . ."

III.

This court affirms the judgment of the BJA because a) the PSOB Act does not provide compensation for the type of injury Mr. Curtis suffered, and b) Claimants did not sufficiently establish a causal link between that injury and Mr. Curtis's death.

AFFIRMED

COSTS

No costs.