Hubert SMYKOWSKI, Jr., et al.

v.

The UNITED STATES.

No. 288–79C.

United States Court of Claims.

April 22, 1981.

———

James D. Kendis, Cleveland, Ohio, attorney of record, for plaintiffs; Shapiro, Kendis & Assoc. Co., L.P.A., Cleveland, Ohio, of counsel.

Loretta Reid, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant; Lynn J.

---

Bush, Virginia I. Bradley and David I. Tevelin, Washington, D. C., of counsel.

Before COWEN, Senior Judge, and KUNZIG and SMITH, Judges.

## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

KUNZIG, Judge:

Plaintiffs ("claimants") seek review by this court of the administrative denial of survivors' death benefits under the Public Safety Officers' Benefits Act of 1976, Pub.L. No. 94–430, 90 Stat. 1346 (1976), 42 U.S.C. §§ 3796–3796c (Supp. III 1979) ("PSOBA"). The cause now comes before the court on the parties' cross motions for summary judgment. Claimants' decedent died from a heart attack suffered shortly after engaging in a physical struggle in the line of duty. The crucial issue is whether these circumstances constitute a compensable event under PSOBA. We hold that they do not and, therefore, are unable to award the contested death benefits.

## I

PSOBA provides, *inter alia*, that "In any case in which the Administration [LEAA] determines, under regulations issued pursuant to this subchapter, that a public safety officer[1] has died as the direct and proximate result of a personal injury sustained in the line of duty, the Administration shall pay a benefit of $50,000 . . . one-half to the surviving . . . children of such officer in equal shares and one-half to the surviving spouse. . . ." 42 U.S.C. § 3796(a)(2) (Supp. III 1979); *accord*, 28 C.F.R. § 32.3 (1980). The implementing regulations state that, " 'Personal injury' means any traumatic in-

jury, as well as diseases which are caused by or result from such an injury, but not occupational diseases." 28 C.F.R. § 32.2(e) (1980). The regulations further provide: " 'Occupational disease' means a disease which routinely constitutes a special hazard in, or is commonly regarded as a concomitant of the officer's occupation." 28 C.F.R. § 32.2(g) (1980). " 'Traumatic injury' means a wound or other condition of the body caused by external force, including injuries inflicted by bullets, explosives, sharp instruments, blunt objects or other physical blows, chemicals, electricity, climatic conditions, infectious diseases, radiation, and bacteria, but excluding stress and strain." 28 C.F.R. § 32.2(f) (1980).

LEAA accompanied its promulgation of these regulations with a "Commentary" in the Federal Register to the effect that deaths resulting from heart disorders, *i. e.*, "chronic, congenital, or progressive cardiac and pulmonary diseases," would not be covered by PSOBA "unless a traumatic injury was a substantial factor in the death." (The "Commentary" does not appear in the Code of Federal Regulations.) Such disorders, in addition to being highly stress-related, are considered to fall within the exclusion in the implementing regulations for occupational diseases.[2] The statement indicates that, "Where, for instance, LEAA determines the cause of death to be myocardial infarction resulting from a coronary thrombosis, no benefit will be paid unless the claimant can demonstrate a substantial causal connection between a traumatic injury and the thrombosis." 42 Fed.Reg. 23260 (1977); *accord*, 42 Fed.Reg. 23254 (1977) ("Supplementary Information").[3]

---

1. Under the Act, " 'public safety officer' means a person serving a public agency in an official capacity, with or without compensation, as a law enforcement officer or fireman." 42 U.S.C. § 3796b(7) (Supp. III 1979). "Public agency" refers to states and other units of local government. § 3796b(6). *Accord*, 28 C.F.R. §§ 32.-2(h) and (q) (1980).

2. The exclusion should apparently be read as modifying the entire first clause of 28 C.F.R. § 32.2(e) (1980), rather than just the immedi-

ately antecedent clause of the regulation. *See supra* at 2.

3. The "Commentary" continues: "Similarly, where an officer suffering from heart disease, such as arteriosclerosis, has sustained a traumatic injury and died of a 'heart attack,' a benefit will be paid only if the injury is determined to be a substantial factor in the officer's death."

The issue of proximate causation under PSOBA is addressed more fully in *Morrow v. United States*, Ct.Cl., 647 F.2d 1099 (1981).

## II

The decedent, Hubert J. Smykowski, was a police officer in Garfield Heights, Ohio. On October 5, 1976, while on duty, he responded to a call for assistance from fellow officers who were in pursuit of two suspects. When Smykowski arrived at the scene, one of the suspects had been captured and the other was known to be hiding in a nearby house. Smykowski and two other policemen entered the house and found the suspect hiding in a closet off a narrow hallway. Smykowski and one of the officers then struggled with the suspect to pull him from his hiding place and lock him in handcuffs. The struggle lasted some two to three minutes and spilled from the hallway into an adjoining bedroom. Shortly after the struggle ended, Smykowski collapsed and was rushed to a hospital, where he was soon pronounced dead.

The report of autopsy disclosed no external or internal evidence of injury. The coroner's verdict was that "death in this case was the end result of Coronary Sclerotic Hypertensive Heart Disease with Acute and Healed Myocardial Infarcts, due to stress during and following the altercation incident to the arrest of the suspect...." This determination is reflected in other medical evidence which also appears in the record.

Claimants thereafter filed for PSOBA benefits. On June 13, 1977, LEAA issued an initial determination of ineligibility. Claimant then requested formal agency reconsideration and the opportunity for an oral hearing before a hearing officer, who ultimately decided that the initial determination of ineligibility should be reversed. The Administrator, upon his own motion, reviewed the award made by the hearing officer and concluded that the initial denial should be reinstated.[4]

The Administrator reasoned that "Officer Smykowski's death was not the direct and proximate result of a personal injury as defined in implementing regulations 28 C.F.R. § 32.2(e) and (f) governing the Public Safety Officers' Benefit Act...." The Administrator's decision continued:

Deaths resulting from chronic, congenital, progressive cardiac or pulmonary diseases are not covered by the Act unless a traumatic injury was a substantial factor in the death. A traumatic injury was not a substantial factor in the death of Officer Smykowski. The stress and strain incident to a struggle was not a traumatic injury as defined by 28 C.F.R. § 32.2(f).

The Administrator's decision was dated January 19, 1979. Claimants filed in this court on August 20, 1979.[5]

## III

Claimants do not take issue with the agency's position excluding stress, strain, and heart disorders from the coverage of the Act, exclusions which, in any event, are amply justified by the statutory language, legislative history,[6] and medical statistics.[7]

4. Under the governing regulations, "claimants" initiate the claims process by filing a written statement or form. 28 C.F.R. § 32.20(a)–(b) (1980). In general, the claim must be filed within one year of the death of the public safety officer. § 32.20(c). Upon the basis of written submissions, § 32.21, LEAA makes an initial finding as to eligibility, § 32.23. The claimant may request formal agency reconsideration of a determination of ineligibility. § 32.24. Opportunity for an oral hearing shall be provided. *Id.* If the claimant is still determined ineligible by the hearing officer, the claimant may request that the Administrator review the record and determination. § 32.-24(i). The Administrator may, upon his own motion, review a determination made by a hearing officer. § 32.24(h). The Administrator is empowered to make the final agency deci-

sion. § 32.24(h)–(i). *See generally* 42 U.S.C. § 3796c (Supp. III 1979).

5. The topic of judicial review of PSOBA denials is discussed in *Russell v. LEAA*, 637 F.2d 354 (5th Cir. 1981).

6. The following statement which appears in the two House Reports is especially relevant:

[I]t is the Committee's intent that the term "personal injury" shall include all injuries to the body which are inflicted by an outside force, whether or not it is accompanied by physical impact, as well as diseases which are caused by or result from such injuries, but not diseases which arise merely out of the performance of duty. *In other words, death from occupational diseases alone are not within the purview of this legislation.*

*See* 42 Fed.Reg. 23260 (1977); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964); *Harold v. United States*, 225 Ct.Cl. ——, ——, 634 F.2d 547, 549 (1980). Their argument, instead, is that the Administrator overlooked a crucial factor in arriving at his decision. They essentially contend that the physical struggle in which Officer Smykowski engaged just prior to his death should itself be deemed to be a compensable "traumatic injury" under the regulations. We have no doubt that physical struggle involves something qualitatively different from mere stress and strain. We also agree that physical struggle is categorizable as a traumatic event.

Regardless, we cannot accept the ultimate step in claimants' chain of reasoning, *viz.*, that physical struggle represents a form of traumatic injury. To our minds, the words "struggle" and "injury" convey totally different notions. Our view is consistent with the definition in the regulations, providing that, "[t]raumatic injury means a wound or other condition of the body . . . ." *See supra* at 1104. Properly speaking, a struggle cannot be deemed to be either of these. At most, a physical struggle can serve as the occasion for the sustaining of injuries. If proven, these injuries could authorize an award of benefits under PSOBA. In the instant case, however, the Administrator found that no injury had been suffered. This finding is supported by substantial evidence and therefore will not be disturbed by this court. *See, e. g., Power v. United States*, 209 Ct.Cl. 126, 129–130, 531 F.2d 505, 507 (1976). Thus, no basis for recovery under the regulations—or statute—has been demonstrated.[8]

The public policy questions whether, and under what circumstances, heart attack deaths in the line of duty should be made compensable under PSOBA involve technical and fiscal judgments best left to Congress and the agency.[9] We would welcome legislation in which Congress addresses with specificity the applicability of PSOBA to heart ailment situations.

### IV

All other arguments raised by claimants, although not directly addressed in this opin-

---

H.R.Rep.Nos. 94–1031 and 94–1032, 94th Cong., 2d Sess. 4 (1976) (emphasis supplied).

7. Senator Hruska, speaking during the Senate debate on PSOBA, made the following comments pertinent to the exclusion of heart ailments as an "occupational disease":

Mr. President, while it is important that the survivors of public safety officers who are tragically slain be provided for, it is even more important that steps be taken to avoid unnecessary deaths of police and firefighters. The Law Enforcement Assistance Administration, which will administer this program, firmly believes that many deaths could be avoided if preventive action were taken. By preventive action, I mean assuring that these public safety officers are in good physical and mental condition.

There is good reason for such preventive action, Mr. President, because *recently the National Institute for Occupational Safety and Health identified police work as a most hazardous occupation in terms of the probability of developing stress-related problems. . . . Present evidence . . . indicates that more law enforcement officers are incapacitated because of heart-related illness than due to any other cause.*
122 Cong.Rec. 30712 (1976) (emphasis supplied). *Accord*, Public Safety Officers' Benefits Act: Hearing Before the Subcomm. on Crim.

Laws and Procedures of the Comm. on the Judiciary, Senate, 94th Cong., 2d Sess. 38 (1976) (testimony of Richard W. Velde, LEAA Administrator).

8. This conclusion also disposes of claimants' argument that they would have prevailed before the Administrator had this official applied the statute, rather than the regulations (and "Commentary"), in making his decision. Since no "injury" has been shown, claimants do not have a maintainable claim under any of the applicable standards.

9. A survey of the legislative history shows that Congress has not yet focused upon the relative desirability of extending coverage to heart attack situations. *Public Safety Officers Benefits Act: Hearings Before the Subcomm. on Immigration, Citizenship, and Intl. Law of the Comm. on the Judiciary, House of Representatives*, 94th Cong., 1st Sess. (1975); *Public Safety Officers' Benefits Act: Hearing Before the Subcomm. on Crim. Laws and Procedures of the Comm. on the Judiciary, Senate*, 94th Cong., 2d Sess. (1976); H.Rep.Nos. 94–1031 and 94–1032, 94th Cong., 2d Sess. (1976); S.Rep.No. 94–825, 94th Cong., 2d Sess. (1976); 122 Cong.Rec. 12002, 22633, 30518, 30711 (1976).