# United States Court of Appeals for the Federal Circuit

2009-8002

SUSAN JUNEAU, KEVIN JUNEAU,
RYAN JUNEAU, and STEVEN JUNEAU,
As Surviving Spouse and Children of JOHN ROSS JUNEAU,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

Joseph P. Durham, Jr., Langley & Lee, LLC, of Albany, Georgia, for petitioner.

Jeffrey A. Regner, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.

Appealed from: Public Safety Officers' Benefits

# United States Court of Appeals for the Federal Circuit

2009-8002

SUSAN JUNEAU, KEVIN JUNEAU,
RYAN JUNEAU, and STEVEN JUNEAU,
As Surviving Spouse and Children of JOHN ROSS JUNEAU,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

On petition for review of a decision of the Bureau of Justice Assistance in PSOB claim no. 2004-110.

_____

DECIDED:  September 29, 2008

_____

Before MICHEL, Chief Judge, NEWMAN, and PROST, Circuit Judges.

Opinion for the court filed by Chief Judge MICHEL.  Dissenting opinion filed by Circuit Judge NEWMAN.

MICHEL, Chief Judge.

The Department of Justice's Bureau of Justice Assistance (BJA) denied the claim of Susan Juneau and her three children (Claimants) for benefits under the Public Safety Officers' Benefits Act (the PSOB Act), 42 U.S.C. §§ 3796 et seq. Because the BJA correctly determined that Mrs. Juneau's deceased husband did not suffer a "personal injury" as contemplated by the PSOB Act, this court affirms.

## I.  BACKGROUND

The City of Albany, Georgia, employed John Ross Juneau as the Safety Chief at the Southwest Georgia Regional Airport, a position that required Mr. Juneau to be a law enforcement officer certified by the State of Georgia.  In addition to his employment as the airport Safety Chief, Mr. Juneau also worked part time as a security guard for Dillard's, Inc., a department store located in the Albany Mall.

On March 2, 2003, while working at Dillard's, Mr. Juneau noticed two people who he believed were shoplifting.  As Mr. Juneau approached the suspects, they began to flee, and a chase on foot ensued.  After chasing the suspects out of the store and across the Albany Mall parking lot, Mr. Juneau caught one suspect and brought him to an interview room at Dillard's for interrogation.  After sitting down, Mr. Juneau slumped over in his chair and lost consciousness.  Mr. Juneau was taken to a hospital, but he was pronounced dead shortly after arriving there.

Mr. Juneau's death certificate lists his cause of death as "[c]omplications of coronary atherosclerotic disease . . . in a background of insulin dependent diabetes mellitus."  An autopsy was performed by Dr. Anthony Clark, the same doctor who completed the death certificate; Dr. Clark's autopsy report listed the same cause of death as the death certificate and stated that "no evidence of significant recent or remote traumatic injuries" was present.

After Mr. Juneau's death, his wife and children applied to the Georgia State Indemnification Commission, which ultimately held that, because Mr. Juneau had died in the line of duty, his estate should receive benefits from the State of Georgia.  Key in the Georgia State Indemnification Commission's decision was an opinion from the

Georgia Attorney General considering whether "an off-duty law enforcement officer [who] is working as a security guard and [who] dies from a heart attack pursuing shoplifters" could be said to have died "in the line of duty."

The Claimants also applied to the BJA for benefits under the PSOB Act, which provides a one-time cash payment to survivors of "a public safety officer [who] has died as the direct and proximate result of a personal injury sustained in the line of duty." 42 U.S.C. § 3796(a). In October 2004, the Public Safety Officers' Benefits (PSOB) Office denied this claim on two grounds: (1) Mr. Juneau was serving as a private security guard rather than as a public safety officer at the time of his death, and (2) Mr. Juneau's death was not the result of a traumatic injury. On the latter point, the PSOB Office relied on the decision of this court's predecessor in Smykowski v. United States, 647 F.2d 1103 (Ct. Cl. 1981), to find that Mr. Juneau's death, resulting from "a chronic, congenital, or progressive disease or other condition," was not a death resulting from a "personal injury," as that term is used in the PSOB Act.

In February 2005, Claimants appealed the initial determination to a hearing officer. The hearing officer heard testimony from Mr. Juneau's wife and from employees of Dillard's and the Southwest Georgia Regional Airport. He also received documentary evidence from Dr. Clark, who had performed the autopsy on Mr. Juneau; Dr. Laurence T. Crimmins, Mr. Juneau's family physician; and two physicians from the Armed Forces Institute of Pathology, Dr. Dzuy Nguyen and Dr. Craig Mallak. Dr. Nguyen and Dr. Mallak agreed with Dr. Clark that "Mr. Juneau died from atherosclerotic cardiovascular disease, a natural process." Dr. Crimmins, though, argued that he believed that Mr.

Juneau "died as a result of trauma, specifically the trauma to his body caused by the chase and apprehension of the shoplifting suspect in the minutes before his collapse."

In March 2007, the hearing officer reversed the October 2004 determination, finding both that "the physical nature of the lengthy chase . . . as well as the energy exerted while chasing the suspect . . . were substantial factors contributing to John Ross Juneau's death" and that, "when Mr. Juneau exited the doors of Dillard's, he was acting within the scope of his duties as a State of Georgia law enforcement officer, not as a security guard." Having thus disposed of both problems found in the initial determination, the hearing officer held that Mr. Juneau's survivors were "eligible for coverage under the [PSOB] Program."

In October 2008, the director of the BJA reviewed the hearing officer's decision. The director agreed with the hearing officer that Mr. Juneau was a "public safety officer" within the meaning of that term as used in the PSOB Act, but the director reversed the hearing officer's determination that Mr. Juneau died as a result of an "injury," as that term is used in the PSOB Act. Because the director's finding that Mr. Juneau did not die as the result of an injury required denial of benefits, the director did not make any finding regarding whether Mr. Juneau was acting in the line of duty at the time of his death.

Claimants have appealed the director's final decision that Mr. Juneau did not die as a result of an "injury," as that term is used in the PSOB Act. This court has jurisdiction over Claimants' appeal under 42 U.S.C. § 3796c-2.

## II.  DISCUSSION

Our review of a denial of benefits under the PSOB Act by the BJA is limited to three inquiries: "(1) whether there has been substantial compliance with statutory requirements and provisions of implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the government officials involved; and (3) whether substantial evidence supports the decision denying the claim."  Amber-Messick v. United States, 483 F.3d 1316, 1321 (Fed. Cir. 2007).

The BJA has promulgated regulations implementing the requirement of 42 U.S.C. § 3796(a) that it pay a benefit of $250,000 to survivors of any public safety officer who "die[s] as the direct and proximate result of a personal injury sustained in the line of duty."  Among Claimants' arguments is that, in determining that Mr. Juneau did not die of an "injury" within the meaning of the PSOB Act, the BJA improperly applied versions of its regulations that were not promulgated until after Claimants filed their claim.  In particular, Claimants argue that the BJA should have applied the versions of 28 C.F.R. § 32.4, providing that "any reasonable doubt arising from the circumstances of the officer's death" should be resolved "in favor of payment of the death . . . benefit," and 28 C.F.R. § 32.5, providing that the BJA should "give substantial weight to the evidence and findings of fact presented by State, local, and Federal administrative and investigative agencies," that were in effect in 2004, rather than applying the versions of these regulations presently in effect, which do not contain these provisions.  Chiefly, Claimants believe that, had the BJA applied the 2004 version of 28 C.F.R. § 32.5 to give "substantial weight" to the findings of the Georgia State Indemnification Commission, the BJA could not have then found, as it did, that Mr. Juneau's death was anything other

than the result of an "injury." Claimants also suggest that, had the BJA applied the 2004 version of 28 C.F.R. § 32.4 to resolve reasonable doubt in Claimants' favor, the disagreement between Mr. Juneau's family physician and the three pathologists who presented opinions on the cause of Mr. Juneau's death would have been resolved by agreeing with Dr. Crimmins that the trauma experienced by Mr. Juneau constituted an "injury" within the meaning of the PSOB Act.

We disagree on both counts. First, the findings of the Georgia State Indemnification Commission were irrelevant to the BJA's decision regarding whether or not Mr. Juneau suffered an "injury." The Georgia State Indemnification Commission focused entirely on the question of whether Mr. Juneau died in the line of duty, no surprise given that the relevant Georgia statute contains no requirement that an officer have died as the result of an "injury," but rather only a requirement that the officer have been "killed in the line of duty." Ga. Code Ann. § 45-9-82(a)(1). Thus, the state agency made no findings relevant to any issue other than whether Mr. Juneau died in the line of duty, an issue not presented by this appeal. Regardless of whether Claimants are correct that the 2004 version of the BJA regulations should have been used instead of the present version, the outcome of the BJA's analysis would have been identical either way. Given the irrelevance of this issue to the appeal, the Court need not reach the question of which version of 28 C.F.R. § 32.5 should have been used.

A similar problem exists with respect to Claimants' argument that the BJA should have applied the 2004 version of 28 C.F.R. § 32.4. Even if Claimants were correct, the old version of the regulation merely required that the BJA resolve "reasonable" doubt in Claimants' favor. Given that two pathologists appointed by the BJA agreed with the

pathologist who performed the autopsy on Mr. Juneau that Mr. Juneau did not suffer any traumatic injury, the testimony of Mr. Juneau's family physician—who had not seen Mr. Juneau for two years before his death—that Mr. Juneau experienced trauma is not sufficient in our view to create reasonable doubt about whether that trauma was the result of an "injury" within the meaning of the PSOB Act. Given the lack of reasonable doubt, even application of the 2004 version of 28 C.F.R. § 32.4 would not have required the BJA to adopt the findings of Dr. Crimmins. Again, then, the Court need not reach the question of which version of the regulations should have been applied.

This leaves only the issue of whether the bodily condition that killed Mr. Juneau, which counsel for the BJA characterize as a "heart attack" and which Claimants refer to as a "traumatized condition of the body" caused by the body being in "a hypoxic state," constitutes an "injury," as that term is defined in the regulations promulgated by the BJA to implement the PSOB Act. Once again we are faced with a change in the language of the regulations. Both the 2004 version and the present version of the regulations provide a definition of "injury," but, as with the other regulations discussed above, it makes no difference which version of the regulations we apply.

The present version of the PSOB regulations provides definitions at 28 C.F.R. § 32.3 and defines the term "injury" as:

> a traumatic physical wound (or a traumatized physical condition of the body) directly and proximately caused by external force (such as bullets, explosives, sharp instruments, blunt objects, or physical blows), chemicals, electricity, climatic conditions, infectious disease, radiation, virii [sic], or bacteria, but does not include --
> (1) Any occupational disease; or
> (2) Any condition of the body caused or occasioned by stress or strain.

28 C.F.R. § 32.3 (2009). The 2004 version of the regulations provides a definition of "injury" at 28 C.F.R. § 32.2(e) as "any traumatic injury, as well as diseases which are caused by or result from such an injury, but not occupational diseases." The 2004 regulations further define "traumatic injury" as "a wound or a condition of the body caused by external force, including injuries inflicted by bullets, explosives, sharp instruments, blunt objects or other physical blows, chemicals, electricity, climatic conditions, infectious diseases, radiation, and bacteria, but excluding stress and strain." 28 C.F.R. § 32.2(g). Thus, the 2004 regulations can be synthesized to provide a definition of injury as "any [wound or condition of the body caused by external force, including injuries inflicted by bullets, explosives, sharp instruments, blunt objects or other physical blows, chemicals, electricity, climatic conditions, infectious diseases, radiation, and bacteria, but excluding stress and strain], as well as diseases which are caused by or result from such [a wound or condition of the body], but not occupational diseases." But for the addition in the present regulation of wounds or bodily conditions caused by viruses, this definition is essentially identical to that presently in effect.

Here, we agree with the BJA that Mr. Juneau's death was not caused by an "injury" falling within this definition. There is no dispute that Mr. Juneau's chasing the shoplifting suspects on foot gave rise to a traumatic condition that, given his "coronary atherosclerotic disease" and "insulin-dependent diabetes mellitus," caused his heart to fail. But a traumatic condition, even one caused by actions taken in the line of duty as a law enforcement officer, is not sufficient to warrant payment of benefits under the PSOB Act. The traumatic condition must also be caused by an injury, and such was not the case here.

Among other things, both the 2004 definition and the present definition have in common that conditions caused by "stress or strain" are excluded from the definition of "injury," even if those conditions can be characterized as "traumatic." Here, Mr. Juneau's traumatic bodily condition was caused by the stress and strain occasioned by his chasing the shoplifting suspects out of Dillard's and across the mall parking lot, physically apprehending one suspect, and bringing that suspect back into the department store for interrogation. This conclusion is supported by all four physicians who presented opinions to the BJA. Dr. Clark, who performed the autopsy, stated that Mr. Juneau's death was natural and a result of "complications of coronary artery disease in a background of insulin-dependent diabetes mellitus," and he found "no evidence of significant recent or remote traumatic injuries." Dr. Nguyen and Dr. Mallak, who were asked by the BJA to answer the question of whether Mr. Juneau's death could be "attributed to the direct or proximate result of the traumatic injury he sustained in the line of duty," answered that "[t]here was no evidence of a traumatic injury" and that death could be expected for someone with "severe atherosclerotic cardiovascular disease . . . when the heart is subjected to increased oxygen demand such as strenuous work." Finally, even Dr. Crimmins, Mr. Juneau's own physician, stated only that Mr. Juneau "died as a result of trauma . . . caused by the chase and apprehension of the shoplifting suspect in the minutes before his collapse," providing no opinion regarding any injury that Mr. Juneau sustained that might have caused the trauma. Given this consistent medical evidence, we cannot say that the BJA's decision fails the requirement that it be supported by substantial evidence. Amber-Messick, 483 F.3d at 1321.

Claimants argue that, merely because Mr. Juneau died from a "traumatic condition of the body" that was "directly attributable [to] the events" following Mr. Juneau's detection of the alleged shoplifting at Dillard's, his death satisfies the injury requirement of the PSOB Act. This ignores the portion of the definition that lays out the causes of traumatic bodily conditions that render those conditions "injuries" under the PSOB Act. The definition limits these causes to "external force (such as bullets, explosives, sharp instruments, blunt objects, or physical blows), chemicals, electricity, climatic conditions, infectious disease, radiation, [viruses], or bacteria." 28 C.F.R. § 32.3 (2009). None of these causes was present in Mr. Juneau's case; the record shows no evidence of Mr. Juneau's having been shot, stabbed, hit, involved in an explosion, exposed to chemicals, electricity, or unusually adverse climatic conditions, infected with any disease-causing agent, or subjected to radiation. Instead, the record amply demonstrates, as the BJA held, that Mr. Juneau's traumatic bodily condition stemmed directly from the stress and strain of chasing and apprehending the shoplifting suspects.

To avoid this conclusion, Claimants argue that this case is factually similar to that presented to the Court of Federal Claims in Bice v. United States, 72 Fed. Cl. 432 (2006), in which the court awarded PSOB benefits to a firefighter who died of a heart attack a little more than one month after having been exposed to heavy smoke while fighting a forest fire. Claimants suggest that here, Mr. Juneau's death is attributable to what happened to him on the job, just as Ms. Bice's death was attributable to the smoke she inhaled in Bice. But this misses the point. In Bice, the issue was whether the firefighter's death was attributable to her smoke inhalation, or whether it was instead attributable solely to her pre-existing heart disease. 72 Fed. Cl. at 436. There was no

issue regarding whether there was an appropriate injury that occurred in the line of duty, only whether that injury was actually the cause of the firefighter's death.  Id.; see also Bice v. United States, 61 Fed. Cl. 420, 430-31 (2004) (decision pre-dating remand to the BJA, finding that smoke inhalation constitutes a traumatic injury, because smoke is a climatic condition).  Here, we encounter precisely the opposite scenario: there is no dispute that Mr. Juneau's death was caused by activities he performed in chasing down the shoplifting suspects, but there is a question whether he suffered any "injury" in the course of those activities that entitles his survivors to benefits.  We answer this question in the negative.

The situation here is factually most similar to that in Smykowski, in which this court's predecessor found no benefits payable where a police officer died of a heart attack after he entered a house in which a suspect was hiding, found the suspect, and struggled with the suspect for a few minutes.  647 F.2d at 1106.  The Court of Claims noted that it could not "accept . . . that physical struggle represents a form of traumatic injury. . . . At most, a physical struggle can serve as the occasion for the sustaining of injuries."  Id.  Similarly, Mr. Juneau in this case chased and apprehended a suspect.  Just as our predecessor court found it difficult to accept that a struggle could be called an injury, we have trouble seeing how a foot chase can be called an injury.  Thus, we agree with the BJA that Mr. Juneau did not die as a result of the type of "injury" that is compensable under the PSOB Act.

COSTS

No costs.

AFFIRMED

# United States Court of Appeals for the Federal Circuit

2009-8002

SUSAN JUNEAU, KEVIN JUNEAU,
RYAN JUNEAU, and STEVEN JUNEAU,
As Surviving Spouse and Children of JOHN ROSS JUNEAU,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

On petition for review of a decision of the Bureau of Justice Assistance in PSOB Claim No. 2004-110.

NEWMAN, Circuit Judge, dissenting.

On May 2, 2003, John Ross Juneau, an airport safety chief, while working as a part-time security guard at a department store, ran after two persons he believed had committed a crime and who were fleeing outside the store, and apprehended one of the suspects. A short time thereafter Mr. Juneau collapsed and died. Mr. Juneau's surviving family members filed a claim pursuant to the Public Safety Officers' Benefits Act (PSOBA), which provides for payment to beneficiaries when "a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty." 42 U.S.C. §3796(a). The medical examiner who performed the autopsy stated that the "immediate precipitating factor contributing to the cause of death was the chase and surrounding events on May 2,

2003." Mr. Juneau's family physician stated that "John Ross Juneau died as a result of trauma, specifically the trauma to his body caused by the chase and apprehension of the shoplifting suspect in the minutes before his collapse on May 2, 2003."

A Hearing Officer for the Bureau of Justice Assistance (BJA), Dr. Voncile B. Gowdy, heard live testimony at a hearing and then requested further documentary evidence, including an independent medical evaluation by two physicians from the Armed Forces Institute of Pathology. Dr. Gowdy considered all of the facts and circumstances of Mr. Juneau's death and concluded that the requirements of the statute were met. Dr. Gowdy remarked that there were discrepancies between the medical evaluation he had ordered (which was based solely on documentation of Mr. Juneau's death) and the medical opinions of the coroner and Mr. Juneau's family physician (who had personally observed Mr. Juneau's body). The Hearing Officer applied the BJA's "reasonable doubt" regulation then in effect, to resolve the issue in favor of the claimants. See 28 C.F.R. §32.4 (2004) ("The Bureau shall resolve any reasonable doubt arising from the circumstances of the officer's death or permanent and total disability in favor of payment of the death or disability benefit.").[1] The Hearing Officer concluded that "the physical nature of the lengthy chase, coupled with the condition of the weather that was present that day, as well as the energy exerted while chasing the suspect on May 2, 2003 were substantial factors contributing to

_____

[1] The Department of Justice argues in this appeal that a regulatory change in 2006 that removed the reasonable doubt standard had retroactive effect to the 2003 death of Mr. Juneau. That retroactivity argument has been rejected by this court and the Court of Federal Claims, which courts have applied the pre-2006 BJA regulation to claims that accrued before the regulatory change. See Amber-Messick v. United States, 483 F.3d 1316, 1325 (Fed. Cir. 2007); Winuk v. United States, 77 Fed. Cl. 207, 215 (2007).

John Ross Juneau's death."

The Director of the BJA, reversing the decision of the Hearing Officer, determined that Officer Juneau had suffered no injury, despite his death from heart failure that all agree was caused by his strenuous pursuit and apprehension of an apparent criminal. This is an implausible conclusion, and is not reconcilable with the purpose of the PSOBA. See Demutiis v. United States, 48 Fed. Cl. 81, 86 (2000) ("The PSOBA is likewise remedial in nature and thus should not be applied grudgingly, but rather should be construed liberally to avoid frustration of its beneficial legislative purpose."); see also Baltimore & Phila. Steamboat Co. v. Norton, 284 U.S. 408, 414 (1932) (laws designed to compensate employees for "personal injuries and deaths occurring in the course of their work" are "deemed to be in the public interest and should be construed liberally in furtherance of the purpose for which they were enacted and, if possible, so as to avoid incongruous or harsh results").

The Department of Justice does not dispute that Mr. Juneau was acting "in the line of duty," as required for benefits under the PSOBA. See 42 U.S.C. §3796(a). It is also not disputed that Mr. Juneau's act of running down and apprehending a person he believed had committed a crime was the direct and proximate cause of his death; that is, Mr. Juneau died from the physical trauma induced by the encounter. The Director of the BJA nonetheless found that Mr. Juneau had not been injured in the line of duty. The Director apparently ignored or discounted the medical evidence that supported the petitioners' claim, and did not take account of the reasonable doubt regulation. This was in violation of the BJA regulations that applied to the petitioners' claim.

The terms and purpose of the PSOBA are squarely met on the facts of this case. The public interest served by this law is not in dispute. The Director's decision, affirmed by my colleagues on this panel, is not the appropriate application of the PSOBA. I respectfully dissent.