NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JULIA A. HESSON, INDIVIDUALLY, AND AS GUARDIAN AND ON BEHALF OF MINOR CHILDREN M.H. AND R.H.,**
*Petitioner*

**v.**

**DEPARTMENT OF JUSTICE,**
*Respondent*

---

2016-1029

---

Petition for review of a decision of the Bureau of Justice Assistance in PSOB Case No. 2010-081.

---

Decided: November 8, 2016

---

JAMES M. WILLIAMS, Krugliak, Wilkins, Griffiths & Dougherty Co. L.P.A., Canton, OH, for petitioner.

COURTNEY D. ENLOW, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD; RAFAEL ALBERTO MADAN, JASON P. COOLEY, Office of the General Counsel, Office of Justice

Programs, United States Department of Justice, Washington, DC.

———————————

Before LOURIE, MOORE, and O'MALLEY, *Circuit Judges.*

PER CURIAM.

Julia Ann (*née* Bernhardt) Hesson ("Bernhardt") appeals, on behalf of herself and her minor children, from the decision of the Department of Justice's Bureau of Justice Assistance ("BJA") approving the claim of Julie Ann (*née* Keady) Hesson ("Keady") for spousal benefits under the Public Safety Officers' Benefits Act (the "PSOB Act"), 42 U.S.C. §§ 3796 *et seq.*  Corrected Joint Appendix ("J.A.") 1–6.  Because the BJA correctly determined that Keady was the surviving spouse under the PSOB Act, we *affirm*.

## BACKGROUND

On April 29, 2009, William Hesson ("Hesson"), a corrections officer, was physically assaulted while on duty. J.A. 14.  He subsequently died as a result of injuries he sustained in the assault.  *Id.*

Prior to his death, Hesson participated in three marriage ceremonies and had six children.  *Id.* at 3.  Hesson and his first wife, Donna (*née* Schmucker) Hesson, had two children and were divorced on May 24, 1993.  *Id.*

On February 25, 1995, Hesson married Keady in North Carolina; the couple had two children.  *Id.*  On March 23, 1999, Hesson and Keady separated and Keady moved to New York.  *Id.* at 14.  Keady attempted to divorce Hesson by filing a petition for divorce in New York; however, because she was unable to locate him, she never served him with the divorce petition.  *Id.*  Thus, Keady and Hesson were never legally divorced.  *Id.* at 5.

On August 14, 2004, a marriage ceremony between Hesson and Bernhardt was performed in Ohio. *Id.* at 14. Hesson and Bernhardt subsequently had two children together. *Id.* at 3.

Following Hesson's death, Bernhardt, Keady, and his children sought death benefits under the PSOB Act. The PSOB Act "provides a one-time cash payment to survivors of 'a public safety officer [who] has died as the direct and proximate result of a personal injury sustained in the line of duty.'" *Juneau v. Dep't of Justice*, 583 F.3d 777, 779 (Fed. Cir. 2009) (quoting 42 U.S.C. § 3796(a)) (alteration in original). The PSOB Act dictates the division of the payment among survivors and provides, in relevant part:

> if there is at least 1 child who survived the public safety officer and a surviving spouse of the public safety officer, 50 percent to the surviving child (or children, in equal shares) and 50 percent to the surviving spouse; [or] if there is no surviving spouse of the public safety officer, to the surviving child (or children, in equal shares) . . . .

42 U.S.C. § 3796(a). Thus, a surviving child's payment amount depends on the number of surviving children and whether there is a surviving spouse.

On October 1, 2010, the Public Safety Benefits Officer ("PSBO") determined that the death of Hesson was covered by the PSOB Act and that each of Hesson's six children was entitled to an equal share of half of the benefit amount. J.A. 31. The PSBO gave Bernhardt additional time to investigate whether Hesson and Keady had been legally divorced. *Id.* at 32.

On February 24, 2011, the PSBO determined that Keady was Hesson's surviving spouse and thus entitled to the remainder of the benefit amount. *Id.* at 17. The PSBO found that no evidence was submitted of a lawful divorce between Hesson and Keady, and that Keady had

not held herself out as divorced from, or not being married to, Hesson. The PSBO explained that Hesson could not have lawfully entered into marriage with Bernhardt in Ohio on August 14, 2004 because, under Ohio law, "[o]ne who is already married has no capacity to enter into another marriage contract, either ceremonial or [at] common law." *Id.* at 15 (quoting *Darling v. Darling*, 335 N.E.2d 708, 710 (Ohio Ct. App. 1961)).

Bernhardt appealed the PSBO's determination and requested review by a Hearing Officer. Bernhardt alleged that Keady had held herself out as being divorced from, or not married to, Hesson and thus Keady was not the surviving spouse. The Hearing Officer conducted a *de novo* review of the record, subpoenaed additional documents from Keady, and held a hearing where he examined Keady. Prior to the hearing, the Hearing Officer denied Bernhardt's request for certain documents from Keady. *Id.* at 2.

On July 15, 2013, the Hearing Officer found that Bernhardt did not provide any evidence showing that Keady was ever divorced from, held herself out as divorced from or not married to, or married to someone other than, Hesson. *Id.* at 25. The Hearing Officer denied Bernhardt's claim and concluded that Keady, not Bernhardt, was Hesson's lawful spouse at the time of his death and was entitled to the spousal benefit under the PSOB Act. *Id.* at 29.

Bernhardt then requested a determination of the claim by the Director of the BJA. Bernhardt also submitted a letter "reiterating" the request for "a hearing and the right to examine Julie Keady" and requesting documents. *Id.* at 2. The Director found that the information sought was unnecessary to determining whether Keady was divorced under the PSOB regulations and that its "sensitive nature . . . suggests that it should not be disclosed to [Bernhardt]." *Id.* at 3. The Director conducted a

*de novo* review of the record and concluded that, under the PSOB Act, Bernhardt was not entitled to benefits because she was not a "spouse" and that Hesson's lawful "surviving spouse" was Keady. *Id.* at 6.

Bernhardt appealed to this court on behalf of herself and her minor children. We have jurisdiction pursuant to 42 U.S.C. § 3796c–2. *Juneau,* 583 F.3d at 780.

### DISCUSSION

"Our review of a denial of benefits under the PSOB Act by the BJA is limited to three inquiries: '(1) whether there has been substantial compliance with statutory requirements and provisions of implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the government officials involved; and (3) whether substantial evidence supports the decision denying the claim.'" *Id.* (quoting *Amber-Messick v. United States,* 483 F.3d 1316, 1321 (Fed. Cir. 2007)).

Bernhardt argues that the BJA failed to substantially comply with the PSOB Act's statutory requirements and implementing regulations by misapplying the term "divorce" in 28 C.F.R. § 32.3. Appellant's Br. 10. She asserts that the BJA should have considered the actions of Hesson, in addition to those of Keady, to determine that Keady and Hesson were divorced and that Hesson died unmarried. Bernhardt does not contest on appeal the BJA's conclusion that she was not a "spouse" under the PSOB Act. J.A. 4. Instead, Bernhardt argues that Keady was not Hesson's surviving spouse for purposes of the PSOB Act and that the entire PSOB Act benefit should therefore be divided equally among Hesson's children.

The government responds that the BJA's interpretation of its own regulation is entitled to substantial deference and that the interpretation was consistent with the regulation and reasonable. Appellee's Br. 12.

We agree with the government that the BJA substantially complied with the statutory requirements and the provisions of the implementing regulations. "The Supreme Court has held that an agency's interpretation of its own regulations is entitled to substantial deference by the courts." *Smith v. Nicholson*, 451 F.3d 1344, 1349 (Fed. Cir. 2006) (collecting cases); *see also Groff v. United States*, 493 F.3d 1343, 1350 n.2 (Fed. Cir. 2007). The BJA's "interpretation of its own rule or regulation is entitled to 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *White v. United States*, 543 F.3d 1330, 1333–34 (Fed. Cir. 2008) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)).

The PSOB Act authorizes a benefit for a "surviving spouse," but does not define that term. Congress authorized the BJA to "establish such rules, regulations, and procedures as may be necessary to carry out the purposes of [the Act]." 42 U.S.C. § 3796c(a); *see also Groff*, 493 F.3d at 1350. The BJA promulgated regulations defining "spouse" and "divorce." "*Spouse means* someone with whom an individual entered into marriage lawfully . . . and *from whom the individual is not divorced*, and includes a spouse living apart from the individual, other than pursuant to divorce. . . ." 28 C.F.R. § 32.3 (emphasis added).

> Divorce means a legally-valid divorce from the bond of wedlock (i.e., the bond of marriage), except that, otherwise, and notwithstanding any other provision of law, a spouse (or purported spouse) of an individual shall be considered to be divorced from that individual within the meaning of this definition if, subsequent to his marriage (or purported marriage) to that individual (and while that individual is living), the spouse (or purported spouse)—(1) Holds himself out as being divorced

> from, or not being married to, the individual; (2) Holds himself out as being married to another individual; or (3) Was a party to a ceremony purported by the parties thereto to be a marriage between the spouse (or purported spouse) and another individual.

*Id.* The BJA interpreted this regulation in relevant part to mean "a surviving spouse is divorced if . . . the surviving spouse has held her or himself out as being divorced or not married to the decedent spouse, being married to another individual, or participated in a marriage ceremony with another individual." J.A. 5; *see also id.* at 17.

Applying the relevant standard, we uphold the BJA's interpretation. The BJA explained that it did not consider the decedent's actions and representations to determine if the claimant was "divorced" under the PSOB Act because that interpretation "all too often would have the harmful consequence of barring innocent spouses from payment." *Id.* at 17. For example, if "a decedent husband had gone about representing himself as single on weekends or on business trips" Bernhardt's proposed construction would bar his widow from receiving the surviving spouse benefit. *Id.* The BJA's interpretation is neither plainly erroneous, nor inconsistent with the regulation.

The BJA considered the actions of Keady and found that she had not held herself out as divorced from Hesson. At the BJA hearing, Keady testified under oath that she never held herself out as being unmarried or divorced from Hesson, that she never went through a marriage ceremony to someone other than Hesson, and that she always acknowledged her married status when dating others. *Id.* at 26. The Hearing Officer found Keady's testimony "believable." *Id.* at 28. Keady also testified that she filed her tax returns as "head of household" and never claimed to be divorced on insurance applications, official financial documents, or employment paperwork.

*Id.* at 5. Keady's federal tax returns showed her filing status as "head of household." *Id.* at 26.

Bernhardt also argues that the BJA acted arbitrarily by failing to permit the introduction or consideration of additional materials she alleges are relevant to whether Keady held herself out as being divorced. Appellant's Br. 11. Bernhardt faults the BJA for denying her requests to subpoena thirteen categories of documents from Keady and to cross-examine Keady.

The government responds that the Director did not act arbitrarily in denying Bernhardt's requests for documents or to cross-examine Keady. The government argues that: nothing in the PSOB Act or its implementing regulations requires the BJA to obtain evidence for a claimant in support of her claim, Appellee's Br. 25; the BJA did not prohibit Bernhardt from submitting any materials and there were no materials submitted by Bernhardt that the BJA did not consider, *id.* at 28–29; and the PSOB regulations do not provide the claimant with the right to cross-examine witnesses, *id.* at 31–32.

We agree with the government that the BJA did not act arbitrarily in denying Bernhardt's requests. The BJA did not prohibit Bernhardt from introducing any evidence and there is no evidence that the BJA failed to consider the evidence submitted. The BJA was not required to permit Bernhardt to cross-examine Keady or subpoena the requested categories of documents from Keady. In any event, the Hearing Officer did subpoena documents from Keady, some of which overlap with Bernhardt's requests, and examined Keady at a hearing. Based on its consideration of all the evidence, the BJA determined that Keady was Hesson's surviving spouse and therefore entitled to fifty percent of the PSOB Act payment amount. The BJA did not act arbitrarily in reaching this conclusion.

We have considered Bernhardt's remaining arguments and conclude that they are without merit. For the foregoing reason, the decision of the BJA is *affirmed*.

**AFFIRMED**

Costs

No costs.