NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LISA AFOLAYAN, WIDOW OF NATHANIEL AFOLAYAN, DECEASED, ON BEHALF OF HERSELF AND HER MINOR DAUGHTER; NATALEE AFOLAYAN, DAUGHTER OF NATHANIEL AFOLAYAN,**
*Petitioners*

**v.**

**DEPARTMENT OF JUSTICE,**
*Respondent*

---

2024-1692

---

Petition for review of a decision of the Bureau of Justice Assistance in PSOB Claim No. 2010-022.

---

Decided:  April 17, 2026

---

NICOLE MASIELLO, Arnold & Porter Kaye Scholer LLP, New York, NY, argued for petitioners.  Also represented by JOHN PATRICK ELWOOD, JILLIAN M. WILLIAMS, Washington, DC.

GEOFFREY M. LONG, Commercial Litigation Branch, Civil Division, United States Department of Justice,

Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY; JASON P. COOLEY, RAFAEL ALBERTO MADAN, Office of Justice Programs, Office of General Counsel, United States Department of Justice, Washington, DC.

———————————

Before DYK, HUGHES, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

This case returns to us for a second time. Lisa Afolayan petitioned the Bureau of Justice Assistance's denial of death benefits following the death of her husband, Agent Nathaniel Afolayan. In Ms. Afolayan's first petition for review, we remanded the case for the Bureau to determine whether the climatic conditions at the time of Agent Afolayan's death were unusual, nonroutine, or unusually adverse. On remand from this court, the Bureau determined that because the climatic conditions on April 30, 2009, in Artesia, New Mexico, were not unusual, nonroutine, or unusually adverse, Agent Afolayan did not sustain a compensable injury. We affirm.

BACKGROUND

I

Under the Public Safety Officers' Benefits Act ("Benefits Act"), when the Bureau determines that "a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty," the Bureau must pay a death benefit to the surviving family of the officer. 34 U.S.C. § 10281(a). The regulation defines "injury" to include:

> [A] traumatic physical wound (or a traumatized physical condition of the body) directly and proximately caused by external force (such as bullets, explosives, sharp instruments, blunt objects, or physical blows), chemicals, electricity, *climatic*

*conditions*, infectious disease, radiation, virus, or bacteria.

28 C.F.R. § 32.3 (emphasis added).

## II

Because this case is before us for a second time, the following facts have been taken from our prior decision in *Afolayan v. Department of Justice*, No. 2021-1452, 2022 WL 1124965 (Fed. Cir. Apr. 15, 2022) ("*Afolayan I*").

At the time of his death, Agent Afolayan was in the last week of a twelve-week training program at the Border Patrol Academy in Artesia, New Mexico. At approximately 2:45 p.m. on April 30, 2009, Agent Afolayan and other agents-in-training performed their final physical-fitness test, which included a one-and-a-half mile run to be completed in thirteen minutes or less. The run took place at approximately 3,400 feet above sea level, with the temperature at approximately 88 degrees Fahrenheit and relative humidity between six and seven percent. After completing the run in eleven minutes and six seconds, Agent Afolayan indicated that he did not feel well and thereafter collapsed. He was initially brought to the Border Patrol Academy's Health Unit for medical assistance. As his condition declined, he was taken first to Artesia General Hospital, then to Covenant Medical Center in Lubbock, Texas. Agent Afolayan died at 10:41 p.m. the next day. Agent Afolayan's death certificate listed his "immediate cause of death as 'Heat Illness' and identified 'cardiomegaly (cardiac disease)' as an 'other significant condition[ ] contributing to death.'" *Afolayan I* at *1 (alteration in original).

Ms. Afolayan filed a claim for death benefits under the Benefits Act in October 2009, relying on the death certificate listing "Heat Illness" as the cause of death. The Bureau denied her claim in March 2012. Ms. Afolayan appealed this denial and requested a determination of her claim by an independent hearing officer. The hearing officer denied Ms. Afolayan's appeal in January 2014. In

February 2019, Ms. Afolayan appealed the hearing officer's determination to the Bureau's Director. In September 2020, the Acting Director of the Bureau concluded from the medical evidence in the record that:

> Agent Afolayan died—not from a wound or condition shown to have itself been 'the direct and proximate result' of climatic conditions, such as heat, or another external force/factor cognizable as an 'injury' under [Benefits Act] regulations—but, rather, as a result of several factors acting together, including physical exertion, sickle cell trait, heat, altitude, and dehydration.

*Id.* at \*2 (citation omitted). This led the Acting Director to conclude that Ms. Afolayan failed to "establish[ ] that Agent Afolayan suffered an 'injury' within the meaning of [the Benefits Act] and its implementing regulations." *Id.* (alterations in original) (citation omitted). Ultimately, the Acting Director denied Ms. Afolayan's claim, after which Ms. Afolayan filed a petition for review in this court. *Id.*

In *Afolayan I*, we held that "climatic conditions" refers to conditions that are "unusual" or "nonroutine"—"that is, conditions different from the typical conditions prevailing in the work environment." *Id.* at \*3. We then remanded the case back to the Bureau to determine whether the temperature, humidity, and altitude "were the type of unusual or out-of-the-ordinary climatic conditions that would qualify for compensation under the regulations." *Id.* at \*4.

### III

On remand, the Director of the Bureau examined past weather patterns and medical opinions and concluded that it was "more likely than not" that the climatic conditions did not cause Agent Afolayan's medical crisis. J.A. 27. Accordingly, the Director again denied Ms. Afolayan's claim.

Ms. Afolayan petitions for review of the Bureau's decision. We have jurisdiction under 34 U.S.C. § 10287.

## DISCUSSION

Before us, Ms. Afolayan asserts that the Bureau erred in its determination that Agent Afolayan did not sustain an injury because the climatic conditions were not unusual, nonroutine, or unusually adverse. We disagree. Because we affirm the Bureau's conclusion that Agent Afolayan did not sustain a compensable "injury" due to unusual, nonroutine, or unusually adverse climatic conditions, we need not address the other issues raised by Ms. Afolayan's petition.

We review the Bureau's denial of a claim for death benefits for: "(1) whether there has been substantial compliance with statutory requirements and provisions of implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the government officials involved; and (3) whether substantial evidence supports the decision denying the claim." *Amber-Messick v. United States*, 483 F.3d 1316, 1321 (Fed. Cir. 2007) (first citing *Yanco v. United States*, 258 F.3d 1356, 1362 (Fed. Cir. 2001); and then citing *Chacon v. United States*, 48 F.3d 508, 511 (Fed. Cir. 1995)). "Substantial evidence is defined as '[t]he degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion even though other reasonable persons might disagree.'" *Giove v. Dep't of Transp.*, 230 F.3d 1333, 1338 (Fed. Cir. 2000) (alteration in original) (citation omitted).

We hold that substantial evidence supports the Bureau's finding that the climatic conditions were not unusual, nonroutine, or unusually adverse. The climatic conditions that existed on the day of Agent Afolayan's run include an elevation approximately 3,400 feet above sea level, with the temperature at approximately 88 degrees Fahrenheit and relative humidity between six and seven percent. The evidence considered by the Bureau showed that the temperatures during the month of April for every year between 2000 to 2009 in Artesia, New Mexico, could reach at least 87 degrees Fahrenheit. J.A. 5–6 &

nn.12–16.[1] Past humidity patterns in Artesia, New Mexico showed that for most days in April 2009, the humidity fell below 10 percent. J.A. 6 & nn.19–20. Evidence regarding the effect of the combination of temperature and humidity on the body in outdoor conditions was shown via the heat index, in particular the wet bulb black globe temperature (WBGT), which at 88 degrees Fahrenheit and seven percent humidity is 71 degrees. J.A. 7 & n.26. Based on a WBGT of 71 degrees, the guidelines from the U.S. Army, U.S. Soccer, and the American College of Sports Medicine did not identify any risks to individuals participating in outdoor work or activities. J.A. 7–10 & nn.28–36. Literature regarding altitude and its effect on the human body identified that an altitude of 3,400 feet above sea level would not typically create adverse physiological reactions. J.A. 12–14. Here, considering all the evidence together, substantial evidence supports the Bureau's determination that the climatic conditions, individually and in combination, were not unusual, nonroutine, or unusually adverse at the time of Agent Afolayan's medical crisis.

Ms. Afolayan argues that the Bureau's decision is erroneous because it failed to consider whether the combination of temperature, humidity, and altitude was unusual for the "work environment" of a Border Patrol Officer. Pet. Br. 50. Ms. Afolayan argues that the Bureau's decision lacks any discussion regarding typical working conditions and that the sources cited by the Bureau are silent regarding the effect of temperature and humidity on altitude. Pet. Br. 51–53. We are not persuaded. The Bureau specifically addressed the combination of temperature, humidity, and altitude and determined that the combination of these

---

[1]    The evidence that the Bureau relied on consists of various websites, databases, and guidelines that are cited in the Bureau's decision. *See* J.A. 5–14 & nn.12–16, 19–22, 24–36. There is no dispute that this evidence was proper for the Bureau to rely on in its analysis.

factors was not unusual, nonroutine, or unusually adverse when Agent Afolayan went on his outdoor physical fitness run. J.A. 14. While the Bureau did not rely on a reference that examined temperature, humidity, and altitude together, the Bureau's analysis sufficiently considered these three factors and its determination is supported by substantial evidence.

Ms. Afolayan also asserts that 28 C.F.R. § 32.3, the regulation defining "injury," uses the bare term "climatic conditions," and does not require conditions that are unusual, nonroutine, or unusually adverse. Pet. Br. 43–49. But we already resolved this very question in *Afolayan I*, when we held that "climatic conditions," as defined in the Benefits Act and its implementing regulations, must be "unusually adverse" or "different from the typical conditions prevailing in the work environment." *Afolayan I* at \*3 (quoting *Juneau v. Dep't of Just.*, 583 F.3d 777, 783 (Fed. Cir. 2009)). Because this question was resolved in our previous decision in *Afolayan I*, law of the case prohibits Ms. Afolayan from reraising this issue. *See Suel v. Sec'y of Health & Hum. Servs.*, 192 F.3d 981, 984–986 (Fed. Cir. 1999) (explaining that under the law of the case doctrine, what was previously decided in an earlier stage of the case is applied to subsequent stages in the litigation).

We have tremendous sympathy for Agent Afolayan's family. However, because substantial evidence supports the Bureau's decision, we cannot say that the Bureau erred in its determination that Agent Afolayan did not sustain an "injury" as contemplated by the Benefits Act.

## CONCLUSION

For the reasons stated above, we affirm the Bureau's decision denying Ms. Afolayan's claim.

## AFFIRMED

### COSTS

No costs.